ROSENBAUM *v.* BAUER.

ROSENBAUM *v.* SAN FRANCISCO.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF CALIFORNIA.

Submitted January 17, 1887. — Decided March 7, 1887.

A Circuit Court of the United States cannot acquire jurisdiction, by removal from a state court, under § 2 of the act of March 3, 1875, c. 137 (18 Stat. 470) of an original proceeding to obtain a mandamus against the treasurer or the board of supervisors of a city, to compel them to take action, in accordance with a statute of the state, to pay the interest or principal of bonds issued by the city.

Section 716 of the Revised Statutes, giving power to a Circuit Court to issue all writs not specifically provided for by statute, which may be necessary for the exercise of its jurisdiction, and agreeable to the usages and principles of law, construed in connection with §§ 1 and 2 of the act of 1875, operates to prevent the issuing by the Circuit Court of a writ of mandamus, except in aid of a jurisdiction previously acquired by that court.

THESE actions were commenced in a state court of California, were removed thence into the Circuit Court of the United States on the plaintiff's motion, and were remanded to the

state court on the defendant's motion. The plaintiff sued out these writs of error. The case is stated in the opinion of the court.

*Mr. Attorney General* and *Mr. A. L. Rhodes* for plaintiff in error.

*Mr. Philip G. Galpin* and *Mr. George Flourney, Jr.,* for defendants in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 13th of October, 1885, Albert S. Rosenbaum brought an action in the Superior Court of the city and county of San Francisco, in the State of California, against John A. Bauer, treasurer of the city and county of San Francisco. The complaint set forth the issuing of certain bonds, called Montgomery Avenue bonds, by the Board of Public Works of the city and county of San Francisco, under an act of the legislature of California, approved April 1, 1872, Stats. of 1871-2, c. 626, entitled " An act to open and establish a public street in the city and county of San Francisco, to be called 'Montgomery Avenue,' and to take private lands therefor." The act provided for the creation by taxation of a fund for the payment of interest on the bonds, and of a sinking fund for their redemption; and enacted that whenever such treasurer should have in his custody $10,000 or more belonging to the sinking fund, he should advertise for proposals for the surrender and redemption of the bonds. The complaint alleged that the plaintiff owned twenty-one of the bonds of $1000 each; that the treasurer had in his hands over $12,000 belonging to the sinking fund; that the plaintiff had exhibited his bonds to the treasurer and demanded that he advertise for proposals for the surrender of bonds issued under the act; that he refused so to do; and that no part of such bonds had been paid. The complaint prayed for a judgment that the defendant, " as treasurer of the city and county of San Francisco, be commanded to advertise for the redemption of Montgomery Avenue

bonds, as in section eleven of the act hereinabove referred to provided."

Three days afterwards, the plaintiff filed a petition for the removal of the suit into the Circuit Court of the United States for the District of California, on the ground that the plaintiff was a citizen of New York and the defendant a citizen of California. The state court made an order of removal. The record being filed in the Federal court, the defendant demurred to the complaint, specifying as a ground of demurrer that the Federal court had no jurisdiction of the subject of the action. The case being heard on the demurrer, the court made an order, on the 18th of January, 1886, that the cause be remanded to the state court, "this court having no jurisdiction of this cause in this form." The plaintiff has brought a writ of error to review that order.

The same act provided that an annual tax should be levied on the property therein mentioned to raise money to pay the coupons annexed to the bonds, and another annual tax to create a sinking fund for the redemption of the bonds, the taxes to be levied in the manner in which other taxes are levied, that is, by the Board of Supervisors. The same Rosenbaum, being the owner of twenty-one of the bonds, and of eight matured coupons, of $30 each, attached to each bond, each coupon being for six months' interest, the first of them having matured January 1, 1882, brought an action, on the 12th of December, 1885, in the said Superior Court of the city and county of San Francisco, against the Board of Supervisors of the city and county of San Francisco. The complaint set forth that there were no funds in the hands of the treasurer applicable to the payment of any of the coupons; and that the plaintiff had demanded of the Board that it levy a tax sufficient to pay the coupons, but it had refused so to do. The complaint prayed for a judgment "against said Board of Supervisors, commanding them to levy the tax hereinabove mentioned, and to continue to levy said tax from year to year until all the interest upon said bonds, and said bonds themselves, are fully paid."

On the 21st of December, 1885, the plaintiff filed a petition

for the removal of this latter suit into the Circuit Court of the
United States for the District of California, on the ground of
diversity of citizenship in the parties. The state court made
an order of removal. The defendant made a motion in the
Federal court to remand the case to the state court on the
ground of want of jurisdiction by the Federal court " of the
subject-matter contained in the complaint." On the 24th of
May, 1886, the court made an order granting the motion, and
the plaintiff has brought a writ of error to review that order.

The Circuit Court, in remanding the causes, 28 Fed. Rep.
223, proceeded on these grounds: (1) That it had always been
held by this court that the Circuit Courts had no jurisdiction
to award a *mandamus* except as ancillary to some other pro-
ceeding establishing a demand, and reducing it to judgment,
the *mandamus* being in the nature of process for executing the
judgment. (2) That a proceeding for a *mandamus* was not a
suit of a civil nature, within the meaning of any provision of
the act of March 3, 1875, c. 137, 18 Stat. 470, and was not
removable under it.

Prior to the act of 1875, it was well settled that the Circuit
Courts had no jurisdiction to issue a writ of *mandamus* in a
case like the present.

In *McIntire* v. *Wood*, in 1813, 7 Cranch, 504, it was held
that a Circuit Court had no power to issue a *mandamus* to the
register of a land office of the United States, commanding him
to grant a final certificate of purchase to the plaintiff for lands
to which he supposed himself entitled under the laws of the
United States. In that case, the plaintiff's alleged right to a
certificate of purchase was claimed under the laws of the United
States, but this court, speaking by Mr. Justice Johnson, said,
that the power of the Circuit Courts to issue the writ was con-
fined by § 14 of the Judiciary Act of 1789, 1 Stat. 81, to those
cases in which it might be necessary to the exercise of their
jurisdiction. This provision of § 14 appears now in § 716 of
the Revised Statutes in these words: " Sec. 716. The Supreme
Court and the Circuit and District Courts shall have power to
issue writs of *scire facias*. They shall also have power to issue
all writs not specifically provided for by statute, which may be

necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

In *McClung* v. *Silliman*, in 1821, 6 Wheat. 598, a *mandamus* was applied for in a Circuit Court of the United States to compel the register of a land office of the United States to issue papers to show the preëmptive interest of the plaintiff in certain land. The writ was refused. In this court, the case was sought to be distinguished from *McIntire* v. *Wood*, on the ground that the parties were citizens of different states. But the court, speaking again by Mr. Justice Johnson, said that no just inference was to be drawn from the decision in *McIntire* v. *Wood*, in favor of a case in which the Circuit Court was vested with jurisdiction by citizenship under § 11 of the act of 1789. And then, in answer to the argument, that, as the parties were citizens of different states, and competent to sue under § 11, the Circuit Court was, by § 14, vested with power to issue the writ as one "necessary for the exercise of its jurisdiction," the court said: "It cannot be denied that the exercise of this power is necessary to the exercise of jurisdiction in the court below: but why is it necessary? Not because that court possesses jurisdiction. but because it does not possess it. It must exercise this power and compel the emanation of the legal document, or the execution of the legal act by the register of the land office, or the party cannot sue. The 14th section of the act under consideration could only have been intended to vest the power now contended for in cases where the jurisdiction already exists, and not where it is to be courted or acquired by means of the writ proposed to be sued out."

Consistently with the views in those cases, this court, in *Riggs* v. *Johnson County*, in 1867, 6 Wall. 166, held that a Circuit Court had power to issue a *mandamus* to officers of a county, commanding them to levy a tax to pay a judgment rendered in that court against the county for interest on bonds issued by the county, where a statute of the state, under which the bonds were issued, had made such levy obligatory on the county. This ruling has been repeatedly followed since, and rests on the view that the issue of the *mandamus* is an award of execution on the judgment, and is a proceeding

necessary to complete the jurisdiction exercised by rendering the judgment.

In many cases adjudged in—this court since *McIntire* v. *Wood*, that case has been referred to as settling the law on the point to which it relates; as in *The Secretary* v. *McGarrahan*, 9 Wall. 298, 311; *Bath County* v. *Amy*, 13 Wall. 244; and *Heine* v. *The Levee Commissioners*, 19 Wall. 655.

In *Bath County* v. *Amy*, in 1871, (*ubi supra*,) the holder of bonds issued by a county in Kentucky applied to the Circuit Court of the United States for a *mandamus* to compel the county court to levy a tax to pay the interest on the bonds, on the ground that a statute of the state required the county court to do so. No judgment had been obtained for the interest. In Kentucky such a proceeding could have been maintained in a court of the state, without a prior judgment, and would have been there treated as a suit of a civil nature at common law, and not a mere incident to another suit. The Circuit Court awarded the *mandamus*, but this court reversed the judgment, holding that it was doubtful whether the writ of *mandamus* was intended to be embraced in the grant of power in the 11th section of the Judiciary Act of 1789, to the Circuit Courts, to take cognizance of suits of a civil nature, at common law, where the diversity of citizenship there specified existed; but that the special provision of the 14th section of the act, while, no doubt, including *mandamus* under the term "other writs," indicated that the power to grant that writ generally was not understood to be covered by the 11th section. Citing the prior cases, the court said: "The writ cannot be used to confer a jurisdiction which the Circuit Court would not have without it. It is authorized only when ancillary to a jurisdiction already acquired."

The same doctrine was applied, in *Graham* v. *Norton*, in 1872, 15 Wall. 427, where a Circuit Court of the United States had affirmed the action of a District Court in granting a *mandamus* to compel a state auditor to issue certificates as to the amount of illegal taxes paid by the applicant, the issuing of such certificates being provided for by a statute of the state. This court held that neither the Circuit Court nor the District Court had jurisdiction to issue the writ.

The same principles have been asserted by this court in cases arising since the act of March 3, 1875; as in *County of Greene* v. *Daniel*, 102 U. S. 187, 195; in *United States* v. *Schurz*, 102 U. S. 378, 393; in *Davenport* v. *County of Dodge*, 105 U. S. 237, 242, 243; and in *Louisiana* v. *Jumel*, 107 U. S. 711, 727.

But now it is contended for the plaintiff in error that the Circuit Court can obtain jurisdiction of these cases by their removal under § 2 of the act of 1875. It was evidently though that the Circuit Court would have no original cognizance of them, if commenced in that court, for they were not brought in that court, although in the petition for removal in each proceeding the plaintiff states that he was a citizen of New York when it was commenced, and in the petition for removal in the first proceeding he states that Bauer was at its commencement a citizen of California, the defendant in the second proceeding being, when it was brought, a municipal corporation of California. The proceedings were evidently instituted with the purpose of removing them, for the petitions for removal were severally filed by the plaintiff three days and ten days after process was served on the defendant, and nothing was done in the state court but to file a complaint, and to serve a summons, and to take proceedings for a removal.

To maintain the jurisdiction by removal, it is contended that that jurisdiction does not depend on the original jurisdiction of the Circuit Court; that the former may exist without the latter; and that in the present case it does exist.

The only possible ground of jurisdiction in the present cases, is diversity of citizenship; for the right of action claimed does not arise under the Constitution or a law or treaty of the United States. It exists, if at all, under a statute of the state. The state is not alleged to have passed any law imparing the obligation of any contract of which the plaintiff claims the benefit, or to have deprived him of any right secured to him by the Constitution of the United States. In respect to jurisdiction by citizenship, as applicable to this case, § 1 of the act of 1875, in regard to original jurisdiction, and § 2, in regard to jurisdiction by removal, describe the subject-matter of the suit

in terms which are the same legally. In § 1, the suit of which "original cognizance" is given is a suit "of a civil nature, *at common law* or in equity," where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and "in which there shall be a controversy between citizens of different states." In § 2 the language is identical, except that the suit is to be a suit "of a civil nature, *at law* or in equity." In § 11 of the act of 1789, the original cognizance given to the Circuit Courts was of "all suits of a civil nature, at common law or in equity," where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and "the suit is between a citizen of the state where the suit is brought and a citizen of another state." In § 12 of that act, jurisdiction by removal was given to the Circuit Courts of a like suit. Now, if, as has always been held, "original cognizance," under § 11 of the act of 1789, did not exist, of proceedings like those before us, founded on citizenship, it must necessarily follow that original cognizance cannot exist, under § 1 of the act of 1875, of such a proceeding, founded on citizenship. If so, it is impossible to see how, with legally identical language in § 2 with that in § 1, jurisdiction by removal can exist, under § 2 of the act of 1875, of proceedings like those before us, founded on citizenship. This view is entirely aside from the principle which has controlled in some cases, where a restriction as to original jurisdiction, contained in other provisions of § 11 of the act of 1789, did not exist in § 12 of that act, in regard to jurisdiction by removal, or in other removal statutes. Of that character was the restriction in § 11 on the right of an assignee of a chose in action to sue if the suit could not have been prosecuted in the court had the assignment not been made; as illustrated by the cases cited by the plaintiff in error, of *City of Lexington* v. *Butler*, 14 Wall. 282, and *Claflin* v. *Commonwealth Ins. Co.*, 110 U. S. 81.

In *Gaines* v. *Fuentes*, 92 U. S. 10, an application for removal was sustained under the local prejudice act of March 2, 1867, 14 Stat. 558, of a suit to annul a will, on the ground that the act, in authorizing the removal, invested the Federal court by that fact with all needed jurisdiction to adjudicate the case.

But that case was not one of a *mandamus*, to which the implied restriction of the statute in respect to that writ was applicable. The same remark may be made as to *Boom Company* v. *Patterson*, 98 U. S. 403, where the removed proceeding was one to condemn lands for the use of a boom company; and as to *Hess* v. *Reynolds*, 113 U. S. 73, where the removal was of a proceeding in a Probate Court to obtain payment of a claim against the estate of a deceased person; and as to *Bliven* v. *New England Screw Co.*, 3 Blatchford, 111, and *Barney* v. *Globe Bank*, 5 Blatchford, 107, where foreign corporations successfully maintained jurisdiction by removal, in ordinary suits, although they could not have been compulsorily brought into the Circuit Court, by original process.

As this court, while §§ 11 and 12 of the act of 1789 were in force, and § 14 of that act was also in force, always held, even where the requisite diversity of citizenship existed, that the restriction of § 14 operated to prevent original cognizance by a Circuit Court, under § 11, of a proceeding by *mandamus* not necessary for the exercise of a jurisdiction which had previously otherwise attached, so, with §§ 1 and 2 of the act of 1875 in force at the same time with § 716 of the Revised Statutes, the restriction of § 716 must operate to prevent cognizance by removal, by a Circuit Court, under § 2 of the act of 1875, even where the requisite diversity of citizenship exists, of a like proceeding by *mandamus*. As was said by this court, speaking by Mr. Justice Miller, in *Hess* v. *Reynolds*, 113 U. S. 73, 79, 80, the language of the repealing clause of the act of 1875, is, "that all acts and parts of acts in conflict with the provisions of this act are hereby repealed," and the statute to be repealed must be in conflict with the act of 1875, or that effect does not follow. There is nothing in § 2, or any other part of the act of 1875, which is in conflict with, or has the effect to abolish, the restriction of § 716, just as there was nothing in § 11 or § 12, or any other part of the act of 1789, which was in conflict with, or had the effect to abolish, the restriction of § 14 of that act.

These cases fall directly within the provision of § 5 of the act of 1875, that if, in any suit removed from a state court

to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly "within the jurisdiction" of said Circuit Court, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require. What is meant by the expression "within the jurisdiction"? It means, within the judicial cognizance — within the capacity to determine the merits of the dispute or controversy, and to grant the relief asked for. The provision does not give countenance to the idea that the suit or proceeding is to be retained in the Circuit Court till brought to a formal adjudication on the merits, when, at that ultimate stage, the court must say that the case is not within its jurisdiction, after the party successfully challenging the jurisdiction has been harassed by expense and injured by delay. But it means what it says, that the dismissal or remanding "shall" be made whenever, "at any time" after the suit is brought or removed to the Circuit Court, it shall appear to the satisfaction of that court that there is, really and substantially, no dispute or controversy of which it has jurisdiction, in the sense above pointed out; the right to have a review by this court of the order dismissing or remanding the suit, being given to the aggrieved party at once, instead of his being compelled to await the making of such an order at the end of a full and formal hearing or trial, on issues and proofs, on the merits alleged on either side.

*Orders affirmed.*

MR. JUSTICE BRADLEY, with whom concurred MR. JUSTICE HARLAN and MR. JUSTICE MATTHEWS, dissenting.

MR. JUSTICE HARLAN and MR. JUSTICE MATTHEWS agree with me in dissenting from the judgment of the court in this case.

It is a constitutional right of the citizens of the several states having controversies with the citizens of other states, to have a national forum in which such controversies may be liti-

gated. It was one of the declared purposes of the Constitution, that the judicial power of the United States should extend to certain cases enumerated, one of which was, "to controversies between citizens of different states;" and it was declared that this power should be vested in one Supreme Court, and in such inferior courts as the Congress might from time to time ordain and establish; thus making it the duty of Congress to establish such tribunals. If Congress fails in this constitutional duty, the citizens have no redress but the ballot-box. But Congress has not failed. It has established the requisite tribunals, and has invested them with the powers necessary to give the citizens their constitutional rights. Or, if it has failed in any respect, either with regard to persons or causes, we think it has not failed in respect to the class of cases to which the present belong.

Congress, by the act of March 3, 1875, passed to determine the jurisdiction of the Circuit Courts, has declared that they shall have original cognizance, concurrent with the courts of the several states, amongst other things, of all suits of a civil nature at common law or in equity, involving over five hundred dollars, in which there shall be a controversy between citizens of different states; and that any such suit brought in any state court may be removed by either party into the Circuit Court for the proper district. This jurisdiction should be liberally construed so as to give full effect, as far as may be, to the constitutional right, as presumably within the intent of Congress. The terms "suits at common law and in equity," or "suits at law and in equity" (which is the same thing), are, in themselves, of the most general character and of the broadest signification; and this court ought not, by its decisions, to restrict their application. It is not meant by the expression "suits at common law," to confine the jurisdiction of the Circuit Courts to the old technical actions of trespass, trover, trespass on the case, debt, detinue, assumpsit, &c., but it extends to and includes any form of proceeding of a civil nature in which a legal right cognizable by the courts of common law is sought to be judicially enforced, by whatever name, under the new-fangled nomenclature adopted by the different states, the proceeding

may be called. Suits at law and equity include every form of proceeding except those peculiar to Admiralty, Ecclesiastical or Probate and Military jurisdictions. And even in matters savoring of Ecclesiastical process, after an issue has been formed between definite parties, we have held that the controversy came under the head of a suit at law. *Gaines* v. *Fuentes*, 92 U. S. 10, 17; *Hess* v. *Reynolds*, 113 U. S. 73. The broad terms used in the law were purposely employed, as it seems to us, to make the jurisdiction complete to the full extent which the Constitution intended it should have. It is true, that in one or two cases we have intimated a distinction between the extent of jurisdiction given in the first and that given in the second sections of the act of 1875; but that distinction, if well founded, does not affect the present cases, since they arise under the second section, which has been supposed to be the broader of the two, and, in any event, the ground of distinction is not here involved.

Now, a mandamus, which was originally a prerogative writ only, has come to be in many cases, and in most states, a private suit, brought for the purpose of enforcing a private right. This is true in the two cases now before us. The appellant has a money demand against the city and county of San Francisco, and is seeking to collect it in the usual way in which such demands are collectible by the law of procedure of California. The mandamus which he seeks is the mere process for commencing his action, and is a proper process suited to his case. The city and county of San Francisco can set up any defences to the action in this form which it could do in the ordinary action of debt or upon contract. It is essentially a civil suit at law, no matter by what name it is called, — certainly as much so as were the proceedings in *Gaines* v. *Fuentes, Hess* v. *Reynolds,* already cited, and in *Boom Company* v. *Patterson,* 98 U. S. 403, 404, where there was an issue to ascertain the value of property taken by virtue of eminent domain. In *Davies* v. *Corbin,* 112 U. S. 36, we sustained a writ of error from this court to the Circuit Court on a judgment in a proceeding for mandamus to carry into effect a judgment for a debt. The Chief Justice there said: "While the writ of mandamus, in

cases like this, partakes of the nature of an execution to enforce the collection of a judgment, it can only be got by instituting an independent suit for that purpose.   There must be, first, a showing by the relator in support of his right to the writ; and, second, process to bring in the adverse party, whose action is to be coerced, to show cause, if he can, against it.   If he appears and presents a defence, the showings of the parties make up the pleadings in the cause, and any issue of law or fact that may be raised must be judicially determined by the court before the writ can go out.   Such a determination is, under the circumstances, a judgment in a civil action brought to secure a right, that is to say, process to enforce a judgment.   . . . Such a judgment is, in our opinion, a final judgment in a civil action, within the meaning of that term as used in the statutes regulating writs of error to this court."

In the jurisprudence of California, it has frequently been held that a mandamus is a civil action.   It is only necessary to refer to the cases to show that this is a point beyond all dispute. *Perry* v. *Ames*, 26 Cal. 372; *Cariaga* v. *Dryden*, 30 Cal. 244, 246; *Courtwright* v. *Bear River Mining Co.*, 30 Cal. 573, 583; *Knowles* v. *Yeates*, 31 Cal. 90; *People* v. *Kern County*, 45 Cal. 679; *People* v. *Thompson*, 66 Cal. 398.

But it is urged that the power given to the Circuit Courts of the United States to issue writs of mandamus is limited by act of Congress to certain special cases, namely, only where they may be necessary for the exercise of their ordinary jurisdiction, Rev. Stat., § 716, and that, according to the decisions of this court, in suits for the collection of money, the writ can only be used as ancillary to an execution after a judgment has been obtained in an ordinary suit.   It is sufficient to say that all of these decisions, except two, relate to the law as it was before the passage of the act of 1875.   That act, as we have seen, is expressed in general terms without any qualification as to the writs or process which shall be employed, and repeals any restraining effect of § 716 of the Revised Statutes if in conflict with it.   The two cases to which we have referred as decided since the act are *County of Greene* v. *Daniel*, 102 U. S. 187 and *Davenport* v. *County of Dodge*, 105 U. S. 237.   But the

point decided in these cases was, that, although the state law gave the remedy of mandamus to compel the levy of taxes for the payment of bonds, an ordinary action might nevertheless be brought on the bonds for the purpose of obtaining a judgment. They do not decide, whatever *dicta* may appear to have been made, that mandamus might not have been brought originally.

The inference drawn from § 716, Rev. Stat., is, that as it grants power to this court and the Circuit Courts "to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law," (which is rightly supposed to include the writ of mandamus,) it must be construed as denying the power to issue that writ in any other case. This conclusion might be admissible if it is restrained to the instance of the particular writ of mandamus which alone was in contemplation; that is, the prerogative writ of mandamus as known to the practice of the King's Bench in England. The object of this section of the statute was to give the courts of the United States the power to issue such a writ when necessary in the exercise of a jurisdiction in which the use of such a writ was conformable to law. But the section had no reference to mandamus as a form of civil action, as it has become in modern times, having a definite purpose and scope, and as distinct in its use, for the purpose of enforcing private rights of a particular description, as are the forms of actions known to the common law, such as assumpsit, debt, or trespass. Viewed as a civil action, authorized by the laws of the state in which the suit is brought, the jurisdiction of the Circuit Courts is established by § 1 of the act of 1875, which embraces "all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, . . . in which there shall be a controversy between citizens of different states." If there be such a suit, in which, by the law of the state, the form of proceeding is required to be in mandamus, § 914, Rev. Stat., applies, which requires that "the practice, pleadings, and forms and modes of proceeding in civil cases, other than equity

and admiralty cases, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding." Effect may be given in the present case to this provision of the statute, without running counter to § 716. The fallacy of the argument against the jurisdiction of the Circuit Court, in such cases, is in construing § 716 as an exception out of the general grant of jurisdiction to that court over all suits in which the controversy is between citizens of different states; whereas it is a general grant of power to issue all writs necessary to the exercise of their jurisdiction — a power which would probably have been implied without an express grant.

In our judgment, the cases ought not to have been remanded, and that the judgments of the Circuit Court remanding the same should be reversed.