**STATE ex rel. GLASSELL et al. v. SHELL PETROLEUM CORPORATION.**

**SHELL PETROLEUM CORPORATION v. GLASSELL et al.**

Nos. 2801, 738.

District Court, W. D. Louisiana, Lake Charles Division.

March 2, 1937.

S. W. Plauche, of Lake Charles, La., and Barksdale, Bullock, Warren, Clarke & Van Hook, of Shreveport, La., for Glassell and others.

Geo. C. Schoenberger, Jr., E. A. Mottet, and J. Frank Smith, Jr., all of Houston, Tex., and Arthur J. Shepard, Jr., of Houston, Tex., for Shell Petroleum Corporation

**796**

DAWKINS, District Judge.

In the law case above, plaintiffs filed in the state court of Calcasieu parish an action alleging that defendant, Shell Petroleum Corporation, had connected its pipe line with an oil well on certain property described and "purchased from petitioners the oil produced therefrom * * *"; that the value of the oil so purchased amounts "up to this time in excess of the total sum of One Hundred and Forty-four Thousand and no/100 Dollars, but that the said Shell Petroleum Corporation has withheld from your petitioners payment for said oil, without any right, and in contravention of the provisions of Act No. 64 of the Legislature of Louisiana, for the year 1934."

The petition then sets forth that plaintiff Louisiana Irrigation & Mill Company "is the true and last record owner of the land" from which the said oil was produced, and one-fifth of said oil, "by virtue of its lease to John Glassell, Jr., Edwin C. Kirker and Ashton Glassell"; that the last named three, also plaintiffs herein, were the owners of nine-sixteenths of four-fifths of said oil, purchased by defendant, by virtue of said lease, and that the remaining seven-sixteenths of four-fifths of said oil was owned by John Glassell, trustee.

Petitioners prayed that writ of mandamus issue to defendant "commanding it to pay over to your relators in the proportions hereinabove mentioned, the purchase price of the said oil sold and delivered to the said corporation, as aforesaid, or that it show cause to the contrary on such date and hour as the court may appoint." Upon this petition an order was signed for the issuance of "alternative writs of mandamus as prayed for and according to law," returnable on the 12th day of January, 1937, at 10 o'clock a. m. It was dated January 5, 1937. The statute under which this proceeding was instituted is copied in the note, infra.

Written notice was served by defendant on the counsel of plaintiffs of intention to apply for an order of removal to this court on January 11, 1937. The application with bond was presented accordingly to and refused by the said court. Thereupon, defendant, on the 13th of said month, obtained and filed in this court certified copies of the proceedings according to the federal statute. On the 16th of January following, plaintiff filed a motion to remand on the grounds:

(1) "That this is a mandamus proceeding, authorized by and initiated under Act No. 64 of 1934 of the Legislature of Louisiana," and this court is without jurisdiction or power to issue writs of mandamus or "to give plaintiffs the relief herein sued for."

(2) There is and can be no issue or dispute between plaintiffs and defendant, defendant having purchased and taken into its pipe line the oil from plaintiffs and rendered to them an account of the amount so taken each month and the amount due them.

This is the proceeding at law, above numbered 2801.

On January 13, 1937, defendant, Shell Petroleum Corporation, filed in this court its petition in the equity case, numbered above 738, wherein it was alleged that Glassell and others had filed in the state court the suit at law above mentioned, "claiming the sum of $144,000.00"; that it had made application to remove the same to this court, which had been refused by the state court, and it had filed a copy of the record here, in accordance with the federal statute (Jud.Code § 29, 28 U.S.C.A. § 72); that notwithstanding, counsel for plaintiffs in the state court had threatened to proceed to judgment in that forum; that the proceeding in the state court was "nothing more than a moneyed demand which plaintiffs were seeking to collect" under the state law by mandamus; that the hearing had been postponed until January 14th, but plaintiffs would take judgment by default unless petitioner appeared and pleaded therein, and that a writ of injunction was necessary to protect its rights and the jurisdiction of this court; all of which was duly verified. A restraining order in the equity case in this court was issued, returnable on January 25, 1935, at which time both the motion to remand and the application for preliminary injunction were heard and submitted.

■ A determination of the motion to remand will dispose of both cases. It is true that a writ of mandamus cannot be issued by a federal District Court as an original proceeding, but only in aid of jurisdiction already acquired, such as the enforcement of a judgment previously obtained. Bath County v. Amy, 13 Wall. 244, 246, 20 L.Ed. 539; Graham v. Norton, 15 Wall. 427, 428, 21 L.Ed. 177; Rosen-

baum v. Bauer, 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743. However, these, as well as other cases cited by plaintiff in the law case, were not actions to compel the payment of money. The party seeking the relief had not invoked the jurisdiction of the federal court to have a judgment upon their rights in advance of the summary relief sought, and which the Supreme Court in the cases cited has held is a necessary precedent to such relief. Counsel has cited no case, nor has the court been able to find one, where, as here, the demand was to have the court find the defendant was indebted to the plaintiff in a sum of money and to compel its payment by the summary remedy of mandamus.

In Bath County v. Amy, supra, plaintiff, as the holder of bonds issued by a county of Kentucky, filed an affidavit in the United States court, praying for a writ of mandamus to compel the justices of the county court to levy a tax to pay the principal and interest of said bonds, but there had "been no previous judgment of the court in favor of the party holding the obligations, and no previous attempt made by it to enforce their payment by its ordinary process."

In Graham v. Norton, plaintiff was the assignee in bankruptcy of certain bankrupt estates, which had paid into the State Treasury certain funds as taxes, which the Legislature afterwards found illegal and ordered refunded through certificates to be issued by the state auditor. That official having declined to issue to plaintiff certificates for the sums claimed in favor of the estates which he represented, the latter brought proceedings for mandamus to compel issuance and delivery thereof. It was said: "This court has held that the writ may be issued for the purpose of enforcing a judgment rendered by the Circuit Court, where its use by the State court for that purpose is sanctioned by State laws, but in such cases it is used as a process for the enforcement of judgments and not as an original proceeding."

In Rosenbaum v. Bauer, supra, plaintiff, also being a holder of municipal bonds sought to compel the treasurer of the city of San Francisco to advertise for bids by persons holding such bonds for payment out of the funds collected for their payment and which he was directed to do by the statute whenever funds to a given amount were in his hands. No previous judgment had been obtained against the city, nor did the plaintiff ask for judgment upon the bonds in the proceeding for mandamus, but the issuance of this writ against the treasurer was the sole relief sought, and was accordingly denied.

■ A state may provide any mode of procedure for its own courts, so long as due process of law under the Federal Constitution (Amendment 14) is not denied. New Orleans, etc., Railroad Co. v. Louisiana ex rel. City of New Orleans, 157 U.S. 219, 15 S.Ct. 581, 39 L.Ed. 679. In that case, the Legislature had provided for the enforcement, by mandamus and without a jury, of contracts made by railroad companies with municipal corporations for the pavement of streets which they were permitted to occupy with their tracks, and it was held that this was merely a giving of an additional remedy and did not impair "any substantial right of the other party, does not impair the obligation of the contract sought to be enforced, and is not in conflict with the Constitution of the United States."

It was carried to the Supreme Court of the United States from the Supreme Court of Louisiana, on the constitutional grounds thus decided and did not involve the question raised here of the right of a citizen of another state to remove to a federal court a cause "of a civil nature" under section 28 of the Judicial Code (28 U.S.C.A. § 71).

■ The present suit discloses plainly that the plaintiffs and defendant made a contract for the sale of oil, under which the defendant owes them $144,000, which they are seeking to collect by mandamus under the summary provisions of the state statute. But for this act of the Legislature, there could be no possible doubt that, had the action been by the ordinary proceeding of the state law for a judgment to be collected by execution, the defendant could have removed it to this court. The question is, Can it be deprived of that right by the Legislature thus enacting a special method in this particular class of contracts? I think not. The court will look through the form of proceeding to its substance, and, if it be one falling within the meaning of section 28 of the Judicial Code, giving to citizens of different states the right to invoke the jurisdiction of the federal courts, they will not be denied that right because the state has seen fit to adopt a procedure different from the practice of

the national courts. Colorado Midland R. R. Co. v. Jones (C.C.) 29 F. 193; Searl v. School District, 124 U.S. 197, 8 S.Ct. 460, 31 L.Ed. 415; In re The Jarnecke Ditch (C.C.) 69 F. 161. The demand here being for a sum of money, a judgment rendered in the state court would be subject to execution both by a writ of fi. fa. and proceedings for contempt. In my judgment, it makes, no difference that the defendant may not deny the debt or has no defense. In re Reisenberg, 208 U.S. 90, 28 S.Ct. 219, 52 L.Ed. 403; Memphis Bank v. Houchens (C.C.A.) 115 F. 96. The constitutionality of the state statute has not been assailed, nor was it necessary, in my opinion, to do so. I am therefore of the opinion that the defendant was entitled to remove the case to this court, and the motion to remand should be denied.

Having reached the conclusion that it was properly removed, then the court should protect its jurisdiction by injunction. Since it has been stipulated that the case in equity may be finally decided on the record presented by the rule for preliminary injunction, there should be judgment in favor of Shell Petroleum Corporation, permanently enjoining the proceedings in the state court.

Proper decree should be presented.

NOTE.

Act No. 64.,
House Bill No. 76.

"To foster the development of the natural resources of Louisiana by making it unlawful to withold payment of any sum due lessor, royalty owner, lessee or producer under an oil, gas and mineral lease where the lessee or producer has developed real property under a lease from the last record owner of such property, or of the mineral rights in and to said property have been alienated as of the date of. such lease and under whom said lessee or producer claims, holding under an instrument sufficient in terms to transfer title to such property or said mineral rights; to authorize the purchaser of oil, gas or other minerals produced from such property to pay the price therefor to any party in interest under said mineral lease unless and until a suit testing the title to such property or said mineral rights is filed in the district court of the parish wherein said property is situated, with due notification of such filing given to such purchaser in interest, and releasing such purchaser from all responsibility in connection with all payments so made; to declare such producer, as concerns such purchaser against all other parties, conclusively presumed to be the true and lawful owner of all oil, gas or other minerals produced on said property; to provide that said purchaser shall not be entitled to the benefits of this Act unless recorded notice of said purchase first appears in the conveyance records of the parish where the land producing the purchased products is located; to limit the effects of this Act with respect to such oil, gas or other minerals purchased prior to its effective date; to provide a remedy to compel payment as aforesaid, or under any division order; and to repeal all laws, or parts of laws, in conflict with the provisions of this Act.

"Section 1. Be it enacted by the Legislature of Louisiana, That it shall be unlawful for any person, firm or corporation, or the agent, employee or officer of any such persons, firm or corporation, when

"1. such person, firm or corporation has leased any real property, or has acquired the mineral rights therein by lease or otherwise, from the last record owner thereof, as of the date of such lease and under whom said lessee or producer claims, holding under any instrument sufficient in terms to transfer title to such property or said mineral rights, for the purpose of developing the same for oil, gas or other minerals; or

"2. is holding any such lease under any assignment thereof; or

"3. is producing for his or its account, or is producing and selling to others, any such oil, gas or other minerals under such lease or under any assignment thereof; or

"4. has purchased from any such lessor, or any person holding under such lessor, or from the lessee or any person holding under such lessee, any oil, gas or other minerals produced from said leased property, to withold payment from the lessor or lessee, or any person holding from either or both of them, of any rentals, royalties or other sums whatever, including the purchase price of any such oil, gas or other minerals, due by virtue of such lease to any such lessor or lessee or person holding from either or both of them.

"Section 2. That any person, firm or corporation that has actually drilled or opened on any land in this State, under a mineral lease granted by the last record owner, as aforesaid, of such land or of the

minerals therein or thereunder if the mineral rights in and to said land have been alienated, who holds under an instrument sufficient in terms to transfer the title to such real property, any well or mine producing oil, gas or other minerals shall be presumed to be holding under lease from the true owner of such land or mineral or mineral rights embraced in said lease is filed in the district court of the parish wherein is located said real property. A duly recorded mineral lease from such last record owner shall be full and sufficient authority for any purchaser of oil, gas or other minerals produced by the well or mine aforesaid to make payment of the price of said products to any party in interest under said mineral lease, in the absence of the aforementioned suit to test title or of receipt, by such purchaser, of due notification by registered mail of its filing, and any payment so made shall fully protect the purchaser making the same; and so far as said purchaser is concerned as against all other parties, the producer of such oil, gas or other minerals shall be conclusively presumed to be the true and lawful owner thereof; provided, however, that this protection and presumption, respectively, shall both cease immediately upon the filing, in the district court of the parish wherein said leased land is located, of the aforementioned suit to test title and the receipt by said purchaser of due notification of the filing thereof, which receipt shall be made to appear by the usual postal registry receipt card; and provided, further, that such purchaser shall, however, not be entitled to any of the benefits of this Act unless there shall have been first recorded in the conveyance records of the parish wherein such land is located, due notice of the fact that the oil, gas or other minerals produced thereon has been and will be bought by said purchaser.

"Section 3. That notwithstanding the foregoing provisions, the purchaser, as respects any oil, gas or other minerals purchased prior to the date upon which this Act goes into effect, shall withold payment of the purchase price until the lapse of sixty days from said effective date, or shall not be entitled to the protection said Act affords.

"Section 4. That a writ of mandamus to compel payment of whatever may be due to any party in interest under the circumstances hereinabove set out, or under any division order, may be issued by any court of competent jurisdiction against any person, firm or corporation liable for the payment claimed; and the proceedings shall be tried by preference.

"Section 5. That all laws or parts of laws in conflict with the provisions hereof be and the same are hereby repealed.

"Approved by the Governor: July 12, 1934.

"A true copy:

"E. A. Conway,
    "Secretary of State."