IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40999
_____


STATE OF TEXAS,

Petitioner-Appellant,

versus

REAL PARTIES In Interest, Including
Walter Umphrey, John O'Quinn, John Eddie
Williams, Wayne Reaud and Harold Nix,

Respondents-Appellees.

_____

Appeal from the United States District Court for the
Eastern District of Texas, Texarkana
_____

July 23, 2001

Before GARWOOD, JOLLY, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The district court entered a final judgment, incorporating a settlement agreement that supposedly ended the litigation between the State of Texas and the tobacco industry. It should have been expected that, when attorney's fees are in the billions, a string of disputes would follow. This appeal arises from the post-settlement controversy questioning the legitimacy of the contingency fees awarded to counsel representing the state

1

("Private Counsel").  Texas instituted this pre-litigation discovery proceeding in state court for the purpose of investigating possible fraud and breach of fiduciary duty claims against Private Counsel.  Private Counsel removed the action to federal court, claiming federal jurisdiction on the basis of the settlement agreement and further arguing that the All Writs Act, 28 U.S.C. § 1651, was applicable to protect the integrity of the court's judgment from a collateral assault.  Texas moved to remand, asserting, inter alia, the absence of federal jurisdiction based on the Eleventh Amendment.  The district court, concluding that Texas had submitted itself to the jurisdiction of the federal court, denied the motion and Texas has appealed.  We find no basis in this case for removal jurisdiction under the All Writs Act.  We further conclude that the Texas Rule 202 discovery proceeding presents a premature basis for asserting the district court's jurisdiction to protect the settlement agreement.  We therefore reverse with instructions to remand this action to the state court from whence it came.

I

Taking a cue from sister states that targeted the tobacco industry, the State of Texas hired Private Counsel to file suit in federal court against several tobacco companies to recover medical costs and other expenditures associated with tobacco use.  See Texas v. American Tobacco Co., No. 5:96-CV-91 (E.D.Tex. 1996).

Suit was filed in March 1996.  After 18 months of pre-trial activities, the State and the tobacco companies entered into a Comprehensive Settlement and Release Agreement in January 1998. Under the settlement, Texas agreed to dismiss its claims and the tobacco companies agreed to pay $15.3 billion in damages.  The district court entered a final judgment incorporating prior orders. The paragraphs relevant to this appeal state that the district court would retain exclusive jurisdiction over the provisions of the settlement and final judgment.[1]  The final judgment specifically stated that all persons "who seek to raise any objections or challenges in any forum to any provision of this judgment are hereby enjoined from proceeding in any other state or federal court."  The settlement agreement also stated that "[t]he settlement negotiations resulting in this Settlement Agreement have been undertaken by the parties hereto in good faith."  Finally, the settlement provided for the payment of attorney's fees by the defendants to Private Counsel upon presentation of Private

---

[1]The first paragraph of the comprehensive settlement states:

Settling Defendants and the State of Texas acknowledge that this Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and this Court shall retain jurisdiction for the purposes of implementing and enforcing this Settlement Agreement. The parties hereto agree to present any disputes under this Settlement Agreement, including without limitation any claims for breach or enforcement of this Settlement Agreement, exclusively to this Court.

3

Counsel's estimate of reasonable costs and expenses.[2]  Ruling on Private Counsel's motion for approval of their attorney's fees, the district court determined that the 15 percent contingency fee--provided for by contract between the Attorney General and Private Counsel at the outset of the litigation and totaling $2.3 billion--was reasonable.

Thereafter, on January 30, 1998, several Texas legislators filed a mandamus action in Texas state court, which was removed by Private Counsel and then-Attorney General Dan Morales to federal court.  This mandamus action challenged Morales's authority to bind the State to a contingency fee arrangement.  Once removed to federal court, the legislators asserted that the fee agreement dispute could not be heard by the federal court because of Texas's Eleventh Amendment immunity.[3]  See In re Senator Troy Fraser, No. 5:98-CV-45 (E.D. Tex 1998).

In June 1998, the parties to the fee arrangement dispute

---

[2]That portion of the settlement agreement reads:

Settling Defendants will reimburse . . . Private Counsel for reasonable costs and expenses incurred in connection with this litigation. . . . In addition, within 30 days after the date of this Settlement Agreement, Settling Defendants shall . . . pay to [Private Counsel] an amount equivalent to Private Counsel's best estimate of their reasonable costs and expenses. . . . Private Counsel shall provide Settling Defendants with an approximately documented statement of their costs and expenses.

[3]Then-Governor George W. Bush also intervened to challenge the contingency fee arrangement and the district court's jurisdiction under the Eleventh Amendment.

4

reached a Severance and Standstill Agreement. The agreement gave Private Counsel the choice of either attempting to enforce the original contingency fee arrangement or accepting a fee to be determined by an arbitration panel. The agreement, adopted by the court, severed the fee dispute from the tobacco litigation. See In re Private Counsel Fee Agreement, No. 5:98-CV-270 (E.D. Tex. 1998).

In December 1998, the arbitration panel upped the ante when it awarded Private Counsel nearly $3.3 billion in fees. In the meantime, the Texas political stage was being rearranged. The following month, before Private Counsel had accepted the panel's award, the new Texas Attorney General, John Cornyn, moved to dismiss In re Private Counsel and moved to remand In re Fraser based on the State's Eleventh Amendment immunity.[4] On November 5, 1999, the district court ruled on several outstanding motions and issued a memorandum opinion. See In re Fraser, 75 F.Supp.2d 572 (E.D. Tex. Nov. 5, 1999). The court denied the State's motion to dismiss and the legislators' motion to remand, finding that Texas waived its Eleventh Amendment immunity from claims regarding the attorney's fees agreement by filing the initial tobacco litigation in federal court. See also In re Private Counsel, 1999 WL 1022131 (E.D. Tex. Nov. 5, 1999).

Two weeks later, Private Counsel deftly elected to accept the

---

[4]Texas asserts that Cornyn also initiated an investigation into the fiduciary conduct of Private Counsel during the tobacco litigation at this time.

5

arbitration award and, under the agreement, waived their right to sue under the initial fee arrangement. Texas soon appealed the district court's November 5 jurisdictional rulings to the Fifth Circuit, and this court granted Private Counsel's motion to dismiss for mootness and vacated the district court's underlying jurisdictional decisions. Fraser v. Real Parties, Nos. 00-40024, 00-40036, 00-40038 (5th Cir. July 10, 2000).

On April 27, 2000, the State filed the instant Rule 202 proceeding[5] in state court seeking to depose Private Counsel to "investigate potential claims it believes it may possess for conversion and breach of fiduciary duty."[6] Private Counsel immediately removed the action to federal court and filed a motion for summary judgment.[7] Texas filed an emergency motion to remand,

---

[5]Rule 202 allows a party to petition a state court for depositions in order to investigate potential claims. It reads:

> A person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions either:
> (a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or
> (b) to investigate a potential claim or suit.

Tex. R. Civ. P. 202.1.

[6]Specifically, the State sought to discover whether Private Counsel should have known that the fee agreement was unenforceable, whether Private Counsel improperly sought to benefit themselves at the State's expense, whether tobacco litigation documents were withheld from the State, and whether documentation supports the expenditure of $40 million in legal expenses on the case.

[7]Because removal is properly accomplished under 28 U.S.C. § 1441, and because the district court did not base its denial of the

6

arguing that the Eleventh Amendment barred adjudication of the Rule 202 proceeding in federal court.  On August 15, 2000, the district court, in a very thorough and well-considered opinion, denied the motion to remand and, treating the case as removed from state court, found specifically that (a) the Rule 202 proceeding was a "civil action" for removal purposes under 28 U.S.C. § 1441; (b) the issues in the petition, however, were not supplemental or ancillary to the tobacco litigation;[8] (c) but nevertheless the court could exercise jurisdiction over the Rule 202 petition under the All Writs Act, 28 U.S.C. § 1651, to protect its judgment; because, inter alia, (d) the Eleventh Amendment was no bar to the proceeding

---

State's motion to remand on provisions of that statute, the Rule 202 proceeding was not actually "removed" in any procedurally cognizable way.  Nevertheless, we use the term "removal" to describe the assertion of federal jurisdiction over this case for the sake of clarity.

[8]While "[t]he doctrine of ancillary jurisdiction can hardly be criticized for being overly rigid or precise," Kokkonen v Guardian Life Insurance Co., 511 U.S. 375, 379 (1994), the district court properly refused to assert ancillary jurisdiction over the Rule 202 proceeding.  In a case like this, the exercise of ancillary jurisdiction over a claim with no independent basis for jurisdiction is improper "once judgment [is] entered in the original [suit]."  Peacock v. Thomas, 516 U.S. 349, 355 (1996).  Some cases suggest, however, that ancillary jurisdiction could exist over a subsequent claim when a federal court expressly retains jurisdiction over a final judgment or settlement agreement and the two claims are "factually interdependent" or the subsequent state court action would "effectively nullify" the federal judgment.  Kokkonen, 511 U.S. at 379; Royal Ins. Co. of America v. Quinn-L Capital Corp., 960 F.2d 1286, 1292 (5th Cir. 1992).  However, as explained in this opinion, the Rule 202 proceeding is not factually interdependent with the original tobacco litigation and does not threaten to "effectively nullify" the federal settlement.

7

because the State had waived its immunity as to the tobacco litigation and "all of its outgrowths."  The district court therefore denied Texas's motion to remand.  This appeal of the order denying the remand followed.

## II

Ordinarily, we have appellate jurisdiction only over final judgments, which the district court's order denying remand is not.  We therefore must first address this court's authority to hear this appeal of a non-final ruling.  Private Counsel argues that we lack jurisdiction over this appeal because a district court's remand order is not appealable.  B., Inc. v. Miller Brewing Co., 663 F.2d 545, 548 (5th Cir. 1981) ("Ordinarily, a district court's refusal to remand an action is not in and of itself a final order and cannot be reviewed unless and until a final judgment has been entered.").  However, the Supreme Court held in Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 143-45 (1993), that States "may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity."  Given that the denial of Texas's Eleventh Amendment immunity is a non-frivolous issue in this case, Puerto Rico Aqueduct fully supports this court's jurisdiction over the present appeal.

With appellate jurisdiction established, we now turn to address the primary jurisdictional inquiry in this appeal: whether

8

the district court erred by exercising removal jurisdiction over this state court action under the All Writs Act.

## III

The All Writs Act, 28 U.S.C. § 1651 (a), provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

After acknowledging that it could not assert supplemental or ancillary jurisdiction over the Rule 202 proceeding, the district court found that the All Writs Act authorized it to assert jurisdiction over the Rule 202 state proceeding, despite no independent basis for federal jurisdiction over that proceeding. The court reasoned that, particularly because it had retained jurisdiction over the settlement agreement, it could assert its jurisdiction under the All Writs Act in order to protect and effectuate its final judgment, which incorporated the settlement agreement. The State of Texas, however, argues that the All Writs Act can provide no removal jurisdiction over a matter not otherwise removable and, even if it could, the Rule 202 petition is a separate and distinct proceeding from the original tobacco litigation and in no way threatens the settlement agreement.

Although the Supreme Court has held that the All Writs Act may authorize a court to issue commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it

9

has previously issued in its exercise of jurisdiction otherwise obtained," United States v. New York Telephone, 434 U.S. 159, 172 (1977), almost 200 years of Supreme Court precedent establishes that the Act, originally enacted as part of the Judiciary Act of 1789, cannot serve as an independent basis of jurisdiction. See, e.g., Clinton v. Goldsmith, 526 U.S. 529, 534-35 (1999); Rosenbaum v. Bauer, 120 U.S. 450, 458 (1887); McIntire v. Wood, 11 U.S. (Cranch) 504, 506 (1813). Accordingly, this court has similarly held that "section 1651(a) is not an independent grant of jurisdiction." In re McBryde, 117 F.3d 208, 220 (5th Cir. 1997).

Considering these hoary precedents of the Supreme Court, some circuits have come to the conclusion that § 1651 may not be used as a removal statute to allow a federal court to assert jurisdiction over a purely state court action. These circuits have applied the Act to enjoin state court proceedings when those state actions threatened to disrupt prior orders of the court but have refused to authorize "removal" under the Act. See Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1379-80 (11th Cir. 1998); Hillman v. Webley, 115 F.3d 1461, 1468 (10th Cir. 1997); Westinghouse Electric Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 937 (9th Cir. 1993); Telecommunications Research and Action Ctr. v. FCC, 750 F.2d 70, 76 (D.C. Cir. 1984)(citation omitted)(finding that, while the Act is not an independent source of jurisdiction, it can be utilized in a mandamus action to "aid" a court if it has jurisdiction over a

10

"past, present, or future" action).[9]  Several of these courts have held that, when a federal court has jurisdiction over an action, the All Writs Act grants jurisdiction to issue writs "necessary or appropriate in aid of" that jurisdiction.  Such power would permit a district court to enjoin actions in state court but only where necessary to prevent relitigation of an existing federal judgment or otherwise to protect federal court orders.

On the other hand, some courts have given the All Writs Act a considerably more expansive reading to permit removal of a state court action to the federal court for adjudication even though the action was otherwise non-removable.  See, e.g., NAACP v. Metropolitan Council, 144 F.3d 1168, 1170-71 (8th Cir. 1998); Davis v. Glanton, 107 F.3d 1044, 1047 n.4 (3d Cir. 1997); Sable v. General Motors Corp., 90 F.3d 171, 175 (6th Cir. 1996) (finding removal jurisdiction proper under the Act where necessary to protect federal judgments from state proceedings that would "seriously interfere with" federal consent agreements); In the Matter of VMS Sec. Litig., 103 F.3d 1317, 1323 (7th Cir. 1996); In re Agent Orange Prod. Liab. Litig., 996 F.2d 1425, 1431 (2d Cir. 1993)(explicitly authorizing "[a] district court, in exceptional circumstances, [to] use its All Writs authority to remove an otherwise unremovable state court case in order to effectuate and

_____

[9]While none of these circuits has yet to authorize removal under the All Writs Act, only the Tenth Circuit has categorically held that the Act can never facilitate removal, regardless of the circumstances.

11

prevent the frustration of orders it has previously issued.").

Agent Orange is perhaps the most familiar of this genre. There, a group of plaintiffs attempted to revive tort litigation in state court that involved virtually identical claims addressed in a federal court-approved settlement--a settlement that expressly barred those prior class members from instituting such an action against defendants.  The defendants removed the actions to federal court and the court dismissed those claims barred by the prior settlement.  The Second Circuit upheld the district court's exercise of jurisdiction under the All Writs Act, noting that "exceptional circumstances" existed that authorized the removal of the otherwise unremovable state action.  Id. at 1431.

VMS Securities is also a noteworthy case permitting removal under the All Writs Act.  There, a federal court approved a settlement in a securities fraud class action suit that provided for the release of all further related claims by the class plaintiffs.  Thereafter, a group of class plaintiffs filed suit in state court asserting fraud and breach of fiduciary duty claims against the same defendants, claiming that they were wrongfully induced to join the prior class settlement.  The Seventh Circuit, citing Agent Orange, held that the district court could assert removal jurisdiction over the state law actions under the All Writs Act for the purpose of dismissing those claims because the court explicitly had retained jurisdiction over the initial class action

12

settlement.  <u>Id.</u> at 1323.

Yet, the principle reflected in both <u>Agent Orange</u> and <u>VMS Securities</u>--that an otherwise non-removable action is removable under the All Writs Act--must be questioned in the light of the Supreme Court's decision in <u>Rivet v. Regions Bank of Louisiana (Rivet I)</u>, 522 U.S. 470 (1998).  In <u>Rivet I</u>, a Bankruptcy Court approved the sale of a leasehold estate to a Bank and, after acquiring the entire property, the Bank sold the land to Fountainbleau Storage Associates (FSA).  The holders of a second mortgage on the land sued in state court, alleging that the property had been transferred in the bankruptcy proceeding without satisfying their rights as mortgage holders.  FSA removed the state action to federal court, arguing that the Bankruptcy Court's orders had resolved the petitioners' rights and that the All Writs Act provided federal-question jurisdiction for the case to be removed for federal court resolution.

The Supreme Court thought the argument a poor one; it held that claim preclusion based on a prior federal judgment is a defensive plea that provides no basis for removal.  <u>Id.</u> at 476.  In so holding, the Court embraced a strict reading of 28 U.S.C. § 1441 (the removal statute) and reemphasized the limited circumstances under which an action in state court can properly be removed to federal court.[10]  With <u>Rivet</u> standing as sentry, it would be bold

---

[10]<u>Rivet</u> also calls into doubt the holding of <u>Baccus v. Parrish</u>, 45 F.3d 958 (5th Cir. 1995).  In <u>Baccus</u>, a federal settlement

indeed to read the All Writs Act as authorizing removal of an otherwise unremovable action.[11]

Even accepting the remote proposition that removal still can be proper under the All Writs Act in the face of "extraordinary

_____

agreement ended a suit involving Texas schools for the mentally retarded. Baccus, the parent of a mentally retarded child, later filed suit in state court challenging the implementation of the settlement agreement. The action was removed to federal court. Removal, however, was not based on the All Writs Act, but instead on the general removal statute, 28 U.S.C. § 1441. We concluded that removal was proper where a claim brought in state court "seeks to attack or undermine an order of a federal district court." Id. at 960. The court reasoned that, although the cause of action was brought under the laws of Texas, "courts will typically look beyond the face of a complaint to determine whether removal is proper." Id. at 960. Given Rivet's clear instruction that it is improper to look beyond the face of a well-pleaded complaint to determine the propriety of removal, 522 U.S. at 475, and given that the Baccus defendant chose--either wittingly or unwittingly--not to rely on the All Writs Act as support for removal, our decision in Baccus retains little precedential value and is, in any event, not applicable to the issues we address in this appeal.

[11]Significantly, on remand in Rivet this court illustrated how a federal court's injunctive powers--as contrasted with removal-- under the All Writs Act can be used to prevent the frustration of its orders in later state court proceedings. Following the Supreme Court's decision in Rivet I, FSA filed suit in federal court under the All Writs Act, seeking injunctions against further proceedings in state court by the petitioners. The petitioners, meanwhile, proceeded with their case in state court. The district court enjoined any litigation in state court regarding the second mortgage that had been decided by the Bankruptcy Court. The petitioners challenged the district court's jurisdiction to issue the injunction, and this court held that, while the All Writs Act is not jurisdictional, the injunction was authorized because "jurisdiction is based on the original case" and "it is not necessary for the district court to have jurisdiction over the second suit as an original action." Regions Bank of Louisiana v. Rivet (Rivet II), 224 F.3d 483, 493 (5th Cir. 2000).

14

circumstances,"[12] and further accepting that the procedural requirements for removal under § 1441 pose no barrier to the use of the All Writs Act to bring a state court matter into federal court,[13] the Rule 202 proceeding in this case clearly does not present such facts or circumstances. The proceeding is only an investigatory tool. Both the State and Private Counsel can only speculate as to the eventual outcome of the probe. This pending state court action over which the district court exercised § 1651

---

[12]The breadth and specificity of the removal statutes, found at 28 U.S.C. § 1441, et seq., suggests that federal courts should not read other statutes as providing additional, ad hoc avenues for removal. The Supreme Court's characterization of the All Writs Act as "filling the interstices of federal judicial power" in Pennsylvania Bureau of Correction v. United States Marshals Service, 474 U.S. 34, 41 (1985), gives credence to the argument that the Act should never be used to supplement the removal statutes:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.

Id. at 43 (emphasis added). See also Joan Steinman, The Newest Frontier of Judicial Activism: Removal Under the All Writs Act, 80 B.U. L. Rev. 773 (2000).

[13]The explicit and detailed procedural guidelines for removal outlined by Congress support a finding that removal under the All Writs Act, particularly in this case, is inappropriate. 28 U.S.C. § 1446(a) requires that any claim filed in state court and thereafter removed "shall" be removed to the federal district court "for the district and division within which such action is pending." Texas filed its Rule 202 proceeding in Harris County state court, located in the Southern District of Texas. In order to bring the proceeding before the court that had issued the final judgment in this case, however, Private Counsel "removed" the proceeding directly to the Eastern District of Texas, Texarkana Division.

15

jurisdiction ultimately may or may not pose an actual threat to the federal tobacco settlement. The investigation could lead to no further action, or it could result in a cause of action not contemplated or covered by the settlement agreement; or, indeed, it may lead to the institution of a cause of action for which the invocation of, at least, the injunctive powers of the All Writs Act would be timely and appropriate. In any event, the federal courts cannot preclude the State of Texas from <u>investigating</u> potential claims in the milieu of the Texas courts--pursuant to Texas law-- unless and until such investigation poses an actual threat to the settlement agreement. Private Counsel's claim that such a threat exists is premature.

We recognize that if, at some point in the future, the State attempts explicitly to upset provisions of the settlement agreement in state court, circumstances may well dictate that the proceeding be enjoined. Indeed, we will not decide today whether, under "extraordinary circumstances," the case may be "removed" to federal court under the All Writs Act. In the absence of such extraordinary circumstances, however, that indisputably <u>demand</u> such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment, we hold that the All Writs Act cannot be employed as a vehicle for removal.[14]

---

[14]Because we find no basis for federal jurisdiction in this case, we need not address the other issues raised in this appeal-- the scope of Texas's Eleventh Amendment immunity and whether the Rule 202 proceeding was a "civil action" for removal purposes.

IV

In sum, we hold that the district court erred in exercising its jurisdiction under the All Writs Act and in denying the State's motion to remand.  We therefore reverse and remand to the district court with instructions to remand the Rule 202 proceeding to the Texas state court from which it was removed.

REVERSED AND REMANDED.