IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-30122
_____


MSOF CORPORATION; JAY PAUL LEBLANC,

                                    Plaintiffs-Appellants,

        versus


EXXON CORPORATION; ET AL,

                                    Defendants,

EXXON CORPORATION;
EXXON CHEMICAL CORPORATION;
USS CHEMICAL CO; COPOLYMER
RUBBER & CHEMICAL CORPORATION;
UNIROYAL CORPORATION; DOW
CHEMICAL COMPANY; ETHYL
CORPORATION; SHELL CHEMICAL CO;
AMERICAN HOECHST CORPORATION;
ALLIED CHEMICAL CORPORATION;
RUBICON CHEMICAL CO; PETRO
PROCESSORS OF LOUISIANA INC;
ROBERT BOLGER; J W STREET;
W L RAINEY; NPC SERVICES INC;
XYZ INSURANCE COMPANY,

                                    Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

June 20, 2002

Before GARWOOD, DAVIS, and MAGILL,[1] Circuit Judges.

GARWOOD, Circuit Judge:

_____

[1]Circuit Judge of the Eighth Circuit, sitting by designation.

In this removed case, plaintiffs-appellants MSOF Corporation (MSOF) and Jay Paul LeBlanc (collectively, the plaintiffs) appeal the district court's judgment in favor of defendants-appellees Exxon Corporation, Exxon Chemical Corporation, USS Chemical Company, Copolymer Rubber & Chemical Corporation, Uniroyal Corporation, Dow Chemical Company, Ethyl Corporation, Shell Chemical Company, American Hoechst Corporation, Allied Chemical Corporation, Rubicon Chemical Company, Petro Processors of Louisiana, Inc. (PPI), Robert Bolger (Bolger), J.W. Street (Street), W.L. Rainey (Rainey), NPC Services, Inc. (NPC), and XYZ Insurance Company (collectively, the defendants). Appellants contend, *inter alia*, that the district court erred in denying their motion to remand. We agree with appellants, and accordingly vacate the district court's judgment and remand the case to the district court with instructions to return the case to the state court from which it was removed.

## Facts and Proceedings Below

The plaintiffs own land in the Devil's Swamp area in the Parish of East Baton Rouge, Louisiana. On July 5, 1994, the plaintiffs filed suit against the defendants in Louisiana state court on behalf of themselves and all other similarly situated landowners, alleging that the defendants were responsible for contaminating their land with toxic chemicals. The defendants removed the case to the United States District Court for the Middle

2

District of Louisiana. The plaintiffs filed a motion to remand, asserting that the district court did not have subject matter jurisdiction. After a hearing on the motion to remand, the motion was denied. The defendants moved for summary judgment. The district court granted their motion, holding that the plaintiffs had not produced sufficient evidence to create a disputed issue of material fact relating to an essential element of their claim, and rendered judgment for defendants.

PPI, a Louisiana corporation, was the owner and operator of two hazardous waste disposal facilities in the Devil's Swamp region, the Brooklawn Site and the Scenic Highway site. With the exception of NPC, the other corporate defendants were industrial generators of hazardous waste that made use of the PPI disposal facilities. NPC , a Louisiana corporation, was formed by the industrial generator defendants in 1984 to clean up or remediate the PPI sites in accordance with a federal consent decree. Bolger was president of NPC. Street and Rainey were executive officers of NPC.

PPI operated its waste disposal facility, just north of Devil's Swamp, during the 1960's and 1970's. Plaintiffs' property is located approximately three miles south of the PPI facility. In 1980, the United States Department of Justice, on behalf of the Environmental Protection Agency, sued PPI and several of the industrial generators in the United States District Court for the

3

Middle District of Louisiana under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq*. The State of Louisiana, the City of Baton Rouge, and the Parish of East Baton Rouge intervened in that suit. On February 16, 1984, a consent decree was entered in that case by the United States District Court for the Middle District of Louisiana under which certain companies, including the industrial generator defendants in the present action, agreed to investigate and clean up contamination from the former PPI facility. The consent decree ordered, *inter alia*, that these sites be monitored for thirty years after the completion of remediation under the continuing supervision and jurisdiction of the district court. On August 28, 1989, the district court ordered that the consent decree be supplemented with a Supplemental Remedial Action Plan prepared by the defendants. In 1984, the industrial generator defendants contracted with NPC to perform the remediation work, which has been underway since 1984 under the supervision of Judge Polozola. None of the plaintiffs in this case was ever a party to the consent decree or the case in which it was entered.

The plaintiffs' state court complaint alleged that toxic chemicals emanating from the PPI facility had contaminated their land in the southern half of Devil's Swamp. In resisting the plaintiffs' motion to remand to state court, the defendants asserted that the district court had original jurisdiction under

4

the All Writs Act, 28 U.S.C. § 1651, federal question jurisdiction pursuant to 28 U.S.C. § 1331, and diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2]  The district court found that there was federal question jurisdiction because the plaintiffs' claims really arose under CERCLA, or, alternatively, that the All Writs Act conferred jurisdiction, because of the potential for interference with the court's earlier consent decree.

In granting the defendants' motion for summary judgment, the district court found that the plaintiffs had not produced sufficient evidence to support a finding that any toxic substances from the PPI site reached plaintiffs' land approximately three miles to the south.  Because we hold that the district court lacked jurisdiction, it is not necessary to discuss that court's summary judgment rulings in further detail.

## Discussion

This court reviews a question of the district court's jurisdiction *de novo*.  *United States v. Jimenez-Martinez*, 179 F.3d 980, 981 (5th Cir. 1999).

The district court found that there were at least two bases

---

[2]On appeal, the defendants have abandoned their argument for diversity jurisdiction.  Plaintiffs are Louisiana citizens as are some of the defendants.  To establish diversity jurisdiction the defendants would have the burden of showing that all the non-diverse defendants were fraudulently joined.  *Wilson v. Republic Iron & Steel Co.*, 42 S.Ct. 35, 37 (1921).  Since the defendants have not even attempted to carry this burden, diversity jurisdiction was not established and we do not further consider it.

for exercising jurisdiction: federal question jurisdiction pursuant to CERCLA and jurisdiction by means of the All Writs Act. We hold that there is no basis for federal removal jurisdiction in this case.

I. Federal Question Jurisdiction

Title 28 states the general principles governing removal jurisdiction in non-diversity cases: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. CERCLA contains a particularized jurisdictional statement, which provides that, except as otherwise provided, "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 9613(b).

A federal court only has original or removal jurisdiction if the federal question appears on the face of the plaintiff's well-pleaded complaint and there is generally no federal jurisdiction if the plaintiff properly pleads only a state law cause of action. *E.g.*, *Franchise Tax Bd. v. Construction Laborers*

6

*Vacation Trust*, 103 S.Ct. 2841, 2846 - 47 (1983).  A case may "arise under" federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Id.* at 2846.  But "this statement must be read with caution."  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 106 S.Ct. 3229, 3232 (1986).  A defense that raises a federal question is insufficient.  *Id.*  Even if a plaintiff has a federal cause of action, he "may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar, Inc. v. Williams*, 107 S. Ct. 2425, 2429 (1987).  The "artful pleading" doctrine is an "independent corollary" to the well-pleaded complaint rule. *Rivet v. Regions Bank*, 118 S.Ct. 921, 925 (1998).  Under this principle, removal is not defeated by a plaintiff's omission to plead necessary federal questions.  *Id.*  "The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim."  *Id.*

The plaintiffs' complaint alleges negligent and strict liability torts under Louisiana law.  Its only reference to federal law is an allegation that the PPI facility was maintained in violation of federal regulations *as well as* in violation of state and local regulations.  That, however, does not suffice to render the action one arising under federal law.  *Willy v. Coastal Corp.*, 855 F.2d 1160, 1169-71 (5th Cir. 1988).  The defendants argue that the plaintiffs' complaint, though

7

purporting to seek relief under Louisiana law, actually seeks relief under CERCLA.  The defendants note that the plaintiffs' petition demanded compensatory damages in an amount commensurate with the cost of restoring and remediating the plaintiffs' property and that CERCLA creates a cause of action for such costs.  *See* 42 U.S.C. § 9607(a).  However, Louisiana law also provides a cause of action under which these plaintiffs can attempt to prove that these defendants tortiously caused damage to the plaintiffs' land and can demand the very relief they seek.  *See Mouton v. State*, 525 So. 2d 1136, 1143 (La. App. 1st Cir. 1988); La. Civ. Code arts. 2315(A), 2317, 667.  In enacting CERCLA, Congress expressly disclaimed an intent to preempt state tort liability for the release of hazardous substances.  CERCLA contains a general saving clause and several section-specific saving clauses.  The general saving clause, 42 U.S.C. § 9652(d), provides:

> "Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities."

42 U.S.C. § 9607(j), in the section of the Act that creates liability for response costs, provides, in pertinent part:

8

"Recovery by any person . . . for response costs or damages resulting from a federally permitted release shall be pursuant to existing law in lieu of this section. Nothing in this paragraph shall affect or modify in any way the obligations or liability of any person under any other provision of State or Federal law, including common law, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action or the costs of removal or remedial action of such hazardous substance."

This court and other courts have construed the CERCLA saving clauses in accordance with their plain meanings and have held that they preserve parties' rights arising under state law. *See, e.g.*, *Aviall Servs. v. Cooper Indus.*, 263 F.3d 134, 140 (5th Cir. 2001) (42 U.S.C. § 9613(f) preserves the right of toxic tort defendants to seek contribution under state law); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617 (7th Cir. 1998) (purpose of 42 U.S.C. § 9652(d) "is to preserve to victims of toxic wastes the other remedies they may have under federal or state law"); *see also Cropwell Leasing Co. v. NMS, Inc.*, 5 F.3d 899, 901 (5th Cir. 1993) (*per curiam*) (42 U.S.C. § 9652(d) preserves right of action under general maritime law). CERCLA does not completely preempt the plaintiffs' claims under Louisiana state law. Therefore, the "artful pleading" doctrine is inapplicable, *see Rivet*, 118 S.Ct. at 925, and the plaintiffs are entitled to rely exclusively on state law causes of action, *Caterpillar*, 107 S.Ct. at 2429. There is no federal question jurisdiction arising from preemption or application of the artful pleading doctrine.

9

The defendants argue, however, that, even if the plaintiffs' complaint does not *de facto* state a CERCLA claim, plaintiffs' "right to relief depends upon the construction or application of" federal law. *Smith v. Kansas City Title & Trust Co.*, 41 S.Ct. 243, 245 (1921); *see also Franchise Tax Board*, 103 S.Ct. at 2846. The defendants assert that CERCLA and the consent decree create a "legal servitude" that imposes a limitation upon the ownership and use of the plaintiffs' property.[3] Therefore, the defendants argue, the plaintiffs' right to relief depends on construction of this servitude, which arises under federal law.

The Supreme Court, in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 106 S.Ct. 3229 (1986), explained that the doctrine described in *Smith* and *Franchise Tax Board* must be treated with caution. *Id.* at 3232. "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-

---

[3]The plaintiffs' state law nuisance claims are grounded in La. Civ. Code Art. 667, which provides:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
La. Civ. Code Art. 669 provides:
"If the works or material for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."
La. Civ. Code Art. 659 explains: "Legal servitudes are limitations on ownership established by law for the benefit of the general public or for the benefit of particular persons."

question jurisdiction." *Id.* at 3234. The vindication of these plaintiffs' rights does not turn on resolution of a federal question. The question whether CERCLA or the consent decree could even constitute a "servitude" under Louisiana law is initially a *state* law question. The defendants do not cite any Louisiana cases purporting to answer this question and our research discloses no such case.[4]

We hold that neither CERCLA nor the mere existence of the federal consent decree creates federal "arising under" jurisdiction in this case. Therefore, we must consider whether the All Writs Act standing alone supports removal jurisdiction.

II. Removal Jurisdiction Under the All Writs Act

The All Writs Act, 28 U.S.C. § 1651(a), provides:

> "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

The Supreme Court has held that the All Writs Act may authorize a federal court to issue orders "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has

---

[4]The defendants also contend that the plaintiffs' negligence claims arise under federal law because the scope of what is authorized under CERCLA and the consent decree may limit the defendants' obligations to the plaintiffs. *Franchise Tax Board* easily disposes of this argument. *See Franchise Tax Board*, 103 S.Ct. at 2848 (there is no federal question jurisdiction when "federal law becomes relevant only by way of a defense to an obligation created entirely by state law, and then only if [the plaintiff] has made out a valid claim for relief under state law").

11

previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone*, 98 S.Ct. 364, 372 (1977). The Act is not an independent grant of jurisdiction. In re *McBride*, 117 F.3d 208, 220 (5th Cir. 1997); *see also Clinton v. Goldsmith*, 119 S.Ct. 1538, 1542 (1999) (All Writs Act does not enlarge jurisdiction). However, some circuits have read the All Writs Act to permit "removal"[5] to the federal court of at least some state court actions that were otherwise non-removable. *See, e.g.*, *NAACP v. Metropolitan Council*, 144 F.3d 1168, 1170-71 (8th Cir. 1998); *Davis v. Glanton*, 107 F.3d 1044, 1047 n.4 (3d Cir. 1997); *Sable v. General Motors Corp.*, 90 F.3d 171, 175 (6th Cir. 1996); In re *VMS Securities Litigation*, 103 F.3d 1317, 1323 (7th Cir. 1996); In re *Agent Orange Prod. Liab. Litig.*, 996 F.2d 1425, 1431 (2d Cir. 1993). At least two circuits have held that the All Writs Act can never facilitate removal of an otherwise non-removable action. *Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065, 1070 (11th Cir. 2001), *cert. granted sub nom. Syngenta Crop Protection v. Henson*, 122 S.Ct. 1062 (2002); *Hillman v. Webley*, 115 F.3d 1461, 1469 (10th Cir. 1997); *see also Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 863 (8th Cir. 2002).

Our prior jurisprudence forecloses the possibility of

---

[5]"Removal" is here used in a general sense because, technically, removal is properly accomplished under 28 U.S.C. § 1441. *Texas v. Real Parties in Interest*, 259 F.3d 387, 390 n.7 (5th Cir. 2001).

removal under the All Writs Act except under "extraordinary circumstances." *Texas v. Real Parties in Interest*, 259 F.3d 387, 395 (5th Cir. 2001) ("In the absence of such extraordinary circumstances . . . that indisputably *demand* such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment, we hold that the All Writs Act cannot be employed as a vehicle for removal."), *cert. denied sub nom Umphrey v. Texas*, 122 S.Ct. 924 (2002). In *Real Parties*, we declined to decide whether extraordinary circumstances could ever permit removal under the All Writs Act because, even if such removal was permissible, the circumstances of that case were not sufficiently extraordinary to warrant it. *Id.* at 394 – 95. We expressed our doubt that All Writs Act removal was proper even in the face of extraordinary circumstances. *See id.* at 394 (describing this possibility as a "remote proposition"). We held above that federal "arising under" jurisdiction does not exist in the instant case. So we must now consider whether this case presents extraordinary circumstances that might possibly warrant All Writs Act removal. Only if this case presented such circumstances would we be required to answer the question that the *Real Parties* court left undecided.[6]

---

[6]We recognize that the Supreme Court has granted certiorari on the question whether the All Writs Act can ever serve as the sole basis for removal jurisdiction. *See Syngenta*, 122 S.Ct. 1062. Because the instant case does not require us to go beyond our holding in *Real Parties*, we proceed to decide it rather than await *Syngenta*.

13

The circumstances of this case do not "indisputably *demand*" that removal is "absolutely necessary to vouchsafe the central integrity" of the consent decree. *Real Parties*, 259 F.3d at 395. On the face of their pleadings, the plaintiffs seek compensatory damages under state tort law for alleged injuries to their land. They do not either claim violations of the consent decree or allege that the actions complained of are in conformity with the consent decree; nor do they seek any changes to the consent decree, although, as noted above, the defendants might conceivably attempt to assert compliance with the consent decree as a defense to the plaintiffs' negligence claims. However, the consent decree certainly does not expressly purport to authorize any contamination of plaintiffs' land or anything else plaintiffs complain of. The stated objectives of the consent decree are "to protect public health and the environment from releases of hazardous wastes, solid wastes, hazardous substances and pollutants and contaminants" from the PPI facility. If anything, the plaintiffs' suit is consistent with these objectives, not at odds with them. Pursuant to the consent decree, the governmental entities who were plaintiffs in the underlying suit covenanted not to sue the defendants. But the plaintiffs in this case were not parties to that suit or to the consent decree. The consent decree specifically provides that "[i]t is not the purpose of this agreement nor the intention of the parties to release any

14

other persons or entities not parties to this Consent Decree from any claims or liabilities, the right to pursue which is expressly reserved."

In *Real Parties*, the State of Texas had instituted a pre-suit discovery proceeding in state court to investigate claims of fraud and breach of fiduciary duty against private attorneys in the course of their representation of the state in the federal court tobacco litigation. The private attorneys removed the proceeding to federal district court, arguing that it threatened to interfere with a settlement agreement regarding attorneys' fees that had previously been approved by the district court. We found that it was entirely speculative that the investigative proceeding might somehow interfere with the settlement agreement and that the Texas courts were the proper forum for the proceeding, at least "unless and until" it posed an actual threat to the settlement agreement. *Real Parties*, 259 F.3d at 394 - 95. In the instant case, any threat to the consent decree is now similarly speculative. It is premature to conclude that the plaintiffs' demands for compensatory damages will affect the integrity of the consent decree. *Cf. Nichols*, 284 F.3d at 862 ("[A]llowing federal jurisdiction over [the plaintiff's] state-law claims under the auspices of the All Writs Act, when the federal consent decree will not be directly affected for good or ill by the outcome of the case, would result in a corruption of

15

the Act.")  Should an actual threat to the consent decree arise as the case proceeds in state court, circumstances may permit the federal district court to enjoin the state proceedings.  *See Real Parties*, 259 F.3d at 395.  But this case now presents no circumstances that could permit removal jurisdiction under the All Writs Act, if, indeed, such removal jurisdiction is ever permitted.  *See id.*

## Conclusion

Because we hold that the district court lacked jurisdiction, we REVERSE the denial of the plaintiffs' motion to remand, VACATE the judgment of the district court, and REMAND the case to the district court with directions that it be returned to the state court from which it was removed.

VACATED and REMANDED with directions.

16