**Eli SAXTON, Tanda Saxton, and Angela Jones Plaintiffs**

v.

**CAPITAL ONE BANK Defendant.**

**No. CIV.A. 304CV905WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 29, 2005.

Mark I. Burton, Burton & Burton, PLLC, Kosciusko, MS, Charles C. Edwards, Law Office of Marc Boutwell, Lexington, MS, for Plaintiffs.

Thomas Neal Jamerson, Phelps Dunbar, Jackson, MS, Kenneth J. Grigsby, James Shelson, John W. Robinson, III, for Defendant.

### *MEMORANDUM OPINION AND ORDER GRANTING REMAND*

WINGATE, Chief District Judge.

Before the court are the following two (2) motions: (1) a motion by plaintiffs to remand this civil lawsuit to the Circuit Court of Holmes County, Mississippi, pursuant to Title 28 U.S.C. § 1447(c) [1] [dock-

---

1. Title 28 U.S.C. § 1447(c) provides in perti- nent part: "A motion to remand the case on

et # 4]; and (2) a motion by plaintiffs to amend or correct their rebuttal memorandum in support of their motion to remand [**docket # 10**].

Plaintiffs' motion to amend is unopposed. Further, the court finds it to be well taken. Accordingly, this court grants said motion.

Plaintiffs' motion to remand requires this court to address the jurisprudence of Title 28 U.S.C. § 1332, diversity of citizenship, and more specifically, whether this lawsuit features the requisite amount in controversy. Plaintiffs' motion also obligates this court to review federal question jurisdiction, Title 28 U.S.C. § 1331, and more specifically, whether the protections afforded by the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA") apply to this dispute.

For the reasons enunciated below, this court finds (1) that diversity jurisdiction is lacking in this case and (2) that federal question jurisdiction also is lacking because this court is not convinced that

DIDA here applies, even in light of *Beneficial National Bank v. Anderson,* 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Therefore, this court is persuaded to remand this case to state court for lack of subject-matter jurisdiction.

## I. Pertinent Facts and Procedural Posture

On October 4, 2004, plaintiffs filed a lawsuit against defendant in the Circuit Court of Holmes County, Mississippi, asserting the following state-law claims:

1. breach of contract and tortious/intentional breach of contract;

2. breach of covenant of good faith and fair dealing;

3. deceptive advertising; [2]

4. economic duress;

5. violation of the Mississippi Consumer Protection Act, Miss.Code Ann. § 75–24–3 *et seq.;*

6. unconscionability;

7. negligent, grossly negligent and wanton failure to monitor and train agents;

the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

2. Section 97–23–3 of the Mississippi Code states, in relevant part, the following:

Any person who, with intent to sell or in any way dispose of merchandise, securities, service, or anything offered by such person, directly or indirectly, to the public for sale or distribution, or who, with intent to increase the consumption of or demand for such merchandise, securities, service or other thing, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or an interest therein, makes, publishes, disseminates, circulates or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated or placed before the public within the state, in

a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet or letter, or by a label affixed to the merchandise or its container, or in any other way, an advertisement of any sort regarding merchandise, securities, service or anything so offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading, including but not limited to representing himself as selling at wholesale unless he is actually selling at wholesale those items so represented, and which such person knew, or might on reasonable investigation have ascertained to be untrue, deceptive or misleading, shall be punished by a fine of not more than five hundred dollars ($ 500.00), and the offending person, whether found guilty or not, may be held civilly responsible in tort for damages to persons or property proximately resulting from a violation of this section.

8. conversion and civil theft;

9. intentional and/or negligent infliction of mental and emotional distress and anguish;

10. gross, intentional or negligent misrepresentation; and

11. negligent enrichment.

Plaintiffs' claims all relate to interactions they had with defendant in connection with credit cards issued to them by defendant. On November 8, 2004, defendant timely removed this litigation to this federal forum pursuant to both this court's federal-question jurisdiction under Title 28 U.S.C. § 1331 [3] and its diversity jurisdiction under § 1332.[4]

Thereafter, on November 22, 2004, plaintiffs filed a motion to remand this matter to state court. Plaintiffs contend that federal diversity jurisdiction does not exist because the amount-in-controversy requirement has not been satisfied. Further, say plaintiffs, federal-question jurisdiction is lacking because since defendant is not a national bank, it is thereby not entitled to claim preemption under the National Bank Act.[5]

In response, defendant acknowledged that it incorrectly stated that it was a national bank and, instead, stated that it is actually a federally insured, state-chartered bank to which section 521 of DIDA

applies. In addition, defendant contends that DIDA, like the National Bank Act, completely preempts plaintiffs' state-law claims. Also, defendant reiterates its position that this court has diversity jurisdiction over the parties.

Whether DIDA is entitled to the complete preemption status accorded to the National Bank Act appears to be, from the research of this court, a case of first impression in the Fifth Circuit.[6] Still, in addressing plaintiffs' motion to remand, this court endeavors to decide whether the allegations in plaintiffs' complaint are completely preempted under the reasoning in *Beneficial* so as to confer original subject-matter jurisdiction on this court and provide a basis for defendant's removal of plaintiffs' state-court action. Defendant argues that plaintiffs' allegations amount essentially to a claim for usury and thus are completely preempted according to the rationale of *Beneficial.* Plaintiffs adamantly argue that they have not asserted any usury claims against defendant and thus the case was removed improperly because there is no federal subject-matter jurisdiction over this action. Plaintiffs completely disavow any interpretation of their complaint that would include a claim alleging that they had been charged a rate of interest that is usurious under state law.

---

**3.** Title 28 U.S.C. § 1331 provides the following: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**4.** Title 28 U.S.C. § 1332(a)(1) provides as follows: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between Citizens of different States."

**5.** In *Beneficial,* of course, the United States Supreme Court commands that national

banks, on the other hand, *are* entitled to claim preemption under the National Bank Act.

**6.** The Ninth Circuit had occasion to address, but chose to pass on, the issue of whether DIDA is entitled to complete preemption. *Cross–Country Bank v. Klussman,* 74 Fed. Appx. 796, 797–98 (9th Cir.2003). Instead, the Ninth Circuit left it for the district court to decide the issue, which remanded the case after holding that DIDA did not completely preempt state law. *Cross–County Bank v. Klussman,* No. C–01–4190 SC, 2004 WL 966289, 2004 U.S. Dist. LEXIS 7835 (N.D.Cal. Apr. 30, 2004).

## II. Relevant Law

### A. Removal

 Courts of limited jurisdiction,[7] federal courts are obligated to ascertain subject-matter jurisdiction and must presume that a suit lies outside this limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). A defendant who removes an action from state court to federal court bears the "heavy" burden of demonstrating this court's subject-matter jurisdiction and that removal was proper. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir.2003); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002); *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981); *see also* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3739, at 424 (3d ed. 1998) ("It is ... well-settled under the case law that the burden is on the party seeking to preserve the district court's removal jurisdiction ... to show that the requirements for removal have been met."). Furthermore, the removal statutes are to be strictly construed with all doubts and ambiguities to be resolved against a finding of proper removal. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992). If this burden is not met, the court is bound to remand this action to state court pursuant to § 1447(c).[8] *Buchner v. F.D.I.C.*, 981 F.2d 816, 819 (5th Cir.1993).

### B. Diversity Jurisdiction

Title 28 U.S.C. § 1332 requires that, in federal civil cases predicated upon diversity jurisdiction, the parties must be completely diverse and the amount in controversy exceed $75,000.00, exclusive of interests and costs. Complete diversity is a statutory requirement under § 1332. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir.2004). "The concept of complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir.1968). Neither side to this dispute contests that the parties are, indeed, diverse. Rather, the thrust of plaintiffs' argument that diversity jurisdiction is absent is that the amount in controversy does not exceed $75,000.00, exclusive of interests and costs.

 The Fifth Circuit recognizes "the intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir.2003) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct.

---

7. This limited jurisdiction extends only as far as the United States Constitution and federal statutes allow. *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir.2000). Article III, Section 2 of the United States Constitution provides in pertinent part that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."

8. Again, as stated, *supra*, Title 28 U.S.C. § 1447(c) states, in pertinent part, the following: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

586, 82 L.Ed. 845 (1938)). Thus, in § 1332, Congress instructs that a suit between diverse parties may be adjudicated in a federal forum only if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000.00. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998). The question in this case is whether the second burden has been met. In *St. Paul Mercury Indemnity*, the United States Supreme Court delineated the general method for measuring the amount in controversy: "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." 303 U.S. at 288, 58 S.Ct. 586.

■■ Concomitantly, the Fifth Circuit has established a clear analytic framework for resolving jurisdictional disputes over the amount in controversy. *Luckett v. Delta Airlines*, 171 F.3d 295, 298 (5th Cir. 1999). The removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00. *Id.* (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993)). The defendant may make this showing in one of two ways: (1) by demonstrating that it is "facially apparent" that the claims are likely in excess of $75,000.00; or (2) "by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." *Id.* (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995)); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002) (explaining that the defendant may set forth " 'summary judgment type evidence' of

facts in controversy that support a finding of the requisite amount"). If a defendant satisfies this burden, the plaintiff must then prove "to a legal certainty" that the claim is less than $75,000.00. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995).

## C. Federal–Question Jurisdiction and Complete Preemption

■■ To determine whether an action presents a federal question under § 1331, the court must examine the allegations contained in plaintiffs' well-pleaded complaint. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995). This well-pleaded complaint rule requires that a federal question appear on the face of plaintiffs' state-court complaint in order for the federal court to exercise removal jurisdiction. *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir.2002). Moreover, plaintiffs are generally masters of their lawsuit and can avoid federal jurisdiction by relying exclusively upon state law in their complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Here, plaintiffs' state-court complaint avers only the above-stated eleven (11) state-law causes of action. Defendant admits as much. Defendant, however, argues that this court, under the complete preemption doctrine, should determine that plaintiffs have stated a usury claim under Mississippi law. If so, defendant contends that plaintiffs' disavowal of any cause of action for usury under state law is insufficient because "[t]he definition of usury and the penalties affixed thereto must be determined by the National Bank Act [and, by implication, DIDA] and not by the law of the State." *Beneficial*, 539 U.S. at 10, 123 S.Ct. 2058.

■ Typically, defendants raise federal ordinary or conflict preemption as a defense to plaintiffs' cause of action. This

defense "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Heimann v. Nat. Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir. 1999). However, the Supreme Court has recognized complete preemption as an exception to the well-pleaded complaint rule: "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life*, 481 U.S. at 63, 107 S.Ct. 1542. Where an area of law is "completely preempted," any state-law complaint falling under that area of the law arises under federal law for purposes of the well-pleaded complaint rule. *Caterpillar, Inc.*, 482 U.S. at 393, 107 S.Ct. 2425. The complete preemption doctrine rests on the notion that, "on occasion, . . . the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life*, 481 U.S. at 65, 107 S.Ct. 1542). Such claims, then, are recharacterized as federal claims for purposes of determining removal jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint. Complete preemption of federal law over state law arises only in "extraordinary" situations. *Metro. Life*, 481 U.S. at 66, 107 S.Ct. 1542.

▮▮▮ The Fifth Circuit has set forth a generic test to aid courts in determining whether complete preemption exists. *Id.* at 63, 107 S.Ct. 1542. Complete preemption exists under the following conditions: "(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable." *Heimann*, 187 F.3d at 500. "[F]ew federal statutes can meet such an exacting standard." *Id.* The Supreme Court has found complete preemption to exist in the limited areas of federal labor relations law, certain ERISA cases, and usury claims against national banks. *Beneficial*, 539 U.S. at 6–9, 123 S.Ct. 2058; *Carpenter*, 44 F.3d at 367.

## D. *Beneficial and the National Bank Act*

In *Beneficial*, the Supreme Court addressed whether state law usury claims against a national bank could be removed to federal court based on complete preemption by the National Bank Act under Title 12 U.S.C. § 85,[9] which limits the

---

9. Title 12 U.S.C. § 85 provides as follows:

Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the law of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such State under title 62 of the Revised Statutes. When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and such interest may be taken in advance, reckoning the days for

amount of interest that a national bank may charge, and under § 86,[10] which provides the exclusive remedy for violations of that part. The Supreme Court recognized two circumstances in which a state claim could be removed to federal court: (1) "when Congress expressly so provides"; or (2) "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial*, 539 U.S. at 7, 123 S.Ct. 2058. The Court found that §§ 85 and 86 of the National Bank Act completely preempted state-law usury claims against the defendant national bank and, therefore, removal was appropriate.

The *Beneficial* Court concluded that the federal remedy was exclusive based on the "longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury against national banks" and "the special nature of federally chartered banks." *Id.* at 2064. The Supreme Court reasoned that

> which the note, bill, or other evidence of debt has to run.

**10.** Title 12 U.S.C. § 86 provides the following:

> The taking, receiving, reserving, or charging a rate of Interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred.

**11.** Title 12 U.S.C. § 1831d(a) provides the following:

> In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or

[t]he same federal interest that protected national banks from the state taxation that Chief Justice Marshall characterized as the 'power to destroy' in *M'Culloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 431, 4 L.Ed. 579 (1819), supports the established interpretation of §§ 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction.

*Id.* Thus, "[i]n actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law." *Id.*

### E. DIDA

DIDA, under Title 12 U.S.C. § 1831d(a),[11] establishes the maximum interest rate for loans made by state-chartered, FDIC-insured banks. This statute effectively allows state-chartered, nationally insured banks such as defendant to choose among three (3) interest rate ceil-

> insured branches of foreign banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

ings: (1) the highest rate lawfully permitted without reference to § 1831d(a); (2) a rate not more than one (1) percent above the discount rate on 90–day commercial paper in effect at the Federal Reserve Bank in the federal reserve district where the lender is located; or (3) the highest rate allowed by the laws of the state where the lender is located. The statute expressly preempts any conflicting state law. Section 1831d(b) creates a federal remedy in favor of borrowers who are charged rates in excess of the limits established in § 1831d(a).[12] Borrowers may recover twice the amount of interest paid on a usurious loan, and the entire interest due on the loan will be deemed forfeited.

As defendant champions, this court recognizes that § 1831d is patterned after §§ 85 and 86 of the National Bank Act. Prior to the enactment of DIDA in 1980, regulation of interest rates charged by state banks was solely a matter of state law. As the Fifth Circuit has noted,

> Congress passed the applicable provisions of [DIDA] in 1980, when interest rates stood at record levels, in order to assure that borrowers could obtain credit in states with low usury limits and that federally-insured state lending institutions would not be competitively disadvantaged by those usury rates. Without federal legislation, such institutions were being battered by competition from national banks that were al-

lowed to charge higher rates of interest by federal law.

*Gavey Properties/762 v. First Financial Sav. & Loan Ass'n,* 845 F.2d 519, 521 (5th Cir.1988). To ensure that equalization, Congress consciously incorporated much of the language and standards of § 85 of the National Bank Act into DIDA. *Id.* & n. 5. "Given the similarity of language, the conclusion is virtually compelled that Congress sought to provide federally insured credit institutions with the same 'most-favored lender' status enjoyed by national banks." *Id.* at 521. As a result, courts have held that DIDA § 1831d should be construed *in pari materia* with National Bank Act §§ 85 and 86. *See, e.g., Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818, 826–828 (1st Cir.1992) ("The historical record clearly requires a court to read the parallel provisions of DIDA and the Bank Act in pari materia."); *Hill v. Chem. Bank,* 799 F.Supp. 948, 951–52 (D.Minn. 1992).

### III. Discussion and Analysis

#### A. Diversity Jurisdiction

■ The parties to this litigation are diverse. Plaintiffs are each adult resident Mississippi citizens. Defendant is a Virginia corporation with its principal place of business outside of Mississippi. The sole question for this court to decide regarding the diversity question, then, is whether defendant has satisfied the amount-in-con-

---

**12.** Title 12 U.S.C. § 1831d(b) states the following:

> If the rate prescribed in subsection (a) exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a), the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a), when knowingly done, shall be deemed a forfeiture of the

> entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank or such insured branch of a foreign bank taking, receiving, reserving, or charging such interest.

troversy requirement by a preponderance of the evidence.

The ad damnum clause of plaintiffs' complaint specifically states that they demand damages "not to exceed $70,000.00 for each Plaintiff." Further, plaintiffs specifically disavow any claim for punitive damages in their complaint. As noted earlier, federal courts sitting in diversity possess subject-matter jurisdiction only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." § 1332.

Defendant simply has not presented sufficient evidence indicating that plaintiffs have not acted in good faith in seeking damages for less than the minimum federal jurisdictional amount. Additionally, defendant has not proffered any credible evidence supporting the conclusion that the actual amount in controversy exceeds $75,000.00, exclusive of interest and costs. Therefore, defendant has failed to meet its burden by a preponderance of the evidence that the amount in controversy is greater than the minimum jurisdictional amount.

Not only has defendant failed to meet its burden of showing that the amount in controversy in this litigation exceeds the jurisdictional limit, but the court finds no evidence that plaintiffs lack good faith in seeking such an amount. Plaintiffs' actual damages appear to be less than $75,000.00, and they indicate as such in their complaint. Thus, the court determines that the amount in controversy in plaintiffs' complaint does not claim damages in excess of the federal jurisdictional minimum amount. Accordingly, federal diversity jurisdiction does not exist in this civil action.

## B. Federal–Question Jurisdiction

■■■ In reliance upon *Beneficial,* defendant contends that removal to federal court is proper under federal-question jurisdiction because DIDA, under § 1831d, completely preempts plaintiffs' claim of usury.[13] The gist of defendant's argument is as follows: (1) plaintiffs' allegations fall under DIDA because they are actually usury claims that challenge the "rate of interest" charged by an FDIC-insured state bank; (2) § 1831d (DIDA) is substantially identical to §§ 85 and 86 (National Bank Act) and has been interpreted *in pari materia* therewith; (3) the National Bank Act completely preempts state-law usury claims against national banks; (4) DIDA therefore completely preempts plaintiffs' claims; and (5) consequently, federal-question jurisdiction exists making removal appropriate. This court disagrees.

This court finds defendant's reliance on *Beneficial* to be misplaced. In the instant case, defendant is a state-chartered bank. In *Beneficial,* a national bank chartered under the National Bank Act was the defendant. 539 U.S. at 3–5, 123 S.Ct. 2058. Clearly, the question of the National Bank Act's complete preemption of state claims against the national bank was the primary issue from the face of the complaint in *Beneficial. Id.* at 3–4, 123 S.Ct. 2058. DIDA—specifically, § 1831d—was not before the Supreme Court in that case. Even if DIDA is patterned after §§ 85 and 86 of the National Bank Act and provides a federal cause of action for usury by a state-chartered bank, this factor alone does not establish complete preemption. Defendants cite no case that has interpreted the *Beneficial National Bank* decision as applicable to DIDA, and this court has

**13.** Defendant acknowledges that plaintiffs do not explicitly state a usury claim in their

complaint.

found none. Moreover, complete preemption is a very narrow exception to the well-pleaded complaint rule that creates removal jurisdiction by transforming plaintiffs' state-law cause of action into a federal claim. *Heimann,* 187 F.3d at 499–500. Ordinary preemption, on the other hand, is simply a federal defense to a plaintiffs' suit that does not create removal jurisdiction. *Id.* at 500. In the instant case, if the claim of usury in plaintiffs' complaint is subject to DIDA, defendants may make their defense in state court pursuant to DIDA.

Defendant's chain of reasoning is also flawed because it is based upon an untenable characterization of plaintiffs' complaint. The Court finds that Plaintiff's claims are not in fact usury claims, that is claims challenging the "rate of interest" charged by an FDIC-insured state bank within the meaning of DIDA. Because this error alone is enough to take the case outside the ambit of this court's federal-question jurisdiction under § 1331, the court need not, and will not, analyze subsequent steps in defendant's logic.

In the case *sub judice,* plaintiffs challenge business practices they believe defendant designed and implemented to defraud them. Plaintiffs allege, *inter alia,* that defendant misrepresented the nature and benefit of its services, placed unauthorized and undisclosed charges on customers' accounts, assessed late fees and other interest on these improper charges without informing customers, and breached their express agreements with customers in various ways. With regard to "interest," plaintiffs do not challenge the legality of the rate of interest charged by defendants. Rather, they claim that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves improper, and in sum, should never have been charged at all. It is clear to the court that it is not the per se amount of late fees or other "interest" that plaintiffs challenge here but rather the allegedly improper and deceptive manner in which it was charged. Hence, plaintiffs' complaint is not construable as a claim for usury. *See e.g., Carson v. H & R Block, Inc.,* 250 F.Supp.2d 669, 673 (S.D.Miss.2003) (stating that "district courts have overwhelmingly found that claims for failure to disclose interest charges are not within the scope of § 85" of the National Bank Act); *Hunter v. Beneficial Nat'l Bank USA,* 947 F.Supp. 446, 451–52 (M.D.Ala.1996) (holding that a claim that the defendant fraudulently failed to disclose certain charges for interest was not a claim for usury.).

As stated above, DIDA provides borrowers a cause of action when state-chartered, FDIC insured banks exceed the maximum interest rate chargeable on loans. The maximum rate is detailed in § 1831d(a). In this case, plaintiffs make no claim that defendant exceeded the rate set forth under section § 1831d(a), or any other usury laws for that matter. Quite the contrary: Plaintiffs' complaint specifically disavows "that the fees or interest rates charged by Capital One were usurious under the law of any state (including Mississippi)" and "that the rates or fees themselves were per se unlawful or excessive." Under these circumstances, this court cannot find that plaintiffs' claims are completely preempted by DIDA. *See Hunter,* 947 F.Supp. at 451 (holding that to show that plaintiffs were actually asserting usury claims against a national bank, "[d]efendants have the burden of showing that plaintiffs are, in fact, claiming excessive interest rates in violation of some state law").

The gravamen of plaintiffs' complaint is that defendant misrepresented the nature and cost of its services, not that it charged a usurious rate of interest. Respecting interest, plaintiffs merely contend that de-

fendant wrongfully assessed interest on charges that plaintiffs opine were improper. Plaintiffs do not contest the rate of interest defendant assessed but the fact that it was charged at all, which plaintiffs believe was in direct breach of contract and through unlawful misrepresentations. That plaintiffs refer to this interest as "excessive" in this context, without more, does not transform their complaint into one crying usury.

Notwithstanding the Supreme Court's pronouncement that complete preemption applies only in three circumstances, a few federal courts have found complete preemption in other areas of federal law. Of particular importance to this case, some courts have found that DIDA completely preempts state laws as applied to federally insured, state-chartered financial institutions. *See, e.g., M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs,* 930 F.2d 608 (8th Cir.1991); *Hill,* 799 F.Supp. at 951–52. Defendant argues that because the language and effect of DIDA is substantially similar to that of the National Bank Act, *Hill* establishes that DIDA completely preempts plaintiffs' state-law claims in this case.

In *M. Nahas,* the Eighth Circuit found that §§ 85 and 86 of the National Bank Act were intended by Congress to preempt completely state usury laws and left " 'no room for varying state penalties.' " *Id.* at 610 (quoting *First Nat'l Bank in Mena v. Nowlin,* 509 F.2d 872, 881 (8th Cir.1975)). The Eighth Circuit reasoned that § 86 provides an exclusive federal remedy created to "prevent the application of overly-punitive state law usury penalties against national banks." *Id.* at 612. "Thus," the court held, "whether or not plaintiff artfully attempted to couch its complaint wholly in state law terms, it was necessarily federal in nature and properly removable." *Id.*

*M. Nahas* spawned a number of district court decisions holding that the National Bank Act completely preempts state laws that operate to limit or prohibit late fees charged by national banks. In *Hill,* the district court extended the *M. Nahas* holding to § 1831d (DIDA). In *Hill,* Minnesota residents filed suit in state court against state-chartered, federally insured banks. The plaintiffs therein alleged that late fees and "overlimit" charges violated Minnesota law. Defendants removed the action to federal court. The court found the § 1831d to be "substantially identical to the language of §§ 85 and 86 of the National Bank Act." *Id.* at 952. Following *M. Nahas,* binding authority in its circuit, the district court concluded that, "like § 86 [of the National Bank Act], [§ 1831d(b)] creates an exclusive federal remedy" and, therefore, "completely preempts the field of usury claims against federally-insured state banks." *Id.*

These cases are not binding on this court and do not convince the court that § 1831d completely preempts all state causes of action brought under Mississippi law. Other courts also have been unpersuaded by the analysis used in *Hill* respecting DIDA. *Partin v. Cableview, Inc.,* 948 F.Supp. 1046, 1049 n. 4 (S.D.Ala.1996); *Donald v. Golden 1 Credit Union,* 839 F.Supp. 1394, 1399 (E.D.Cal.1993). Neither *M. Nahas* nor *Hill* points to evidence that Congress clearly intended to make state causes of action within the scope of DIDA removable to federal court based upon complete preemption. Because such intent is the "touchstone" of the complete preemption doctrine, *Metro. Life,* 481 U.S. at 66, 107 S.Ct. 1542; *id.* at 67, 107 S.Ct. 1542 (Brennan, J., concurring), these cases are not particularly persuasive.

## IV. Conclusion

Plaintiffs are the masters of their complaint. They are permitted to assert any

particular theory of law notwithstanding the possibility that other theories may provide them a cause of action. Therefore, the fact that plaintiffs elected to pursue their claims under state-law theories of recovery below the federal jurisdictional amount does not justify removal to this federal court under § 1332.

Additionally, this court is not persuaded that it has federal question jurisdiction based upon an application of DIDA. This court is not satisfied that DIDA completely preempts plaintiffs' state law claims. For these reasons, this court is persuaded to grant plaintiffs' motion to remand for lack of subject-matter jurisdiction either under diversity or federal question jurisdiction. Resultantly, this court directs the Clerk of Court to transfer this case and its papers back to the Circuit Court of Holmes County, Mississippi.